Louisville & Nashville Railroad Company v. Ellis' Admr.

CASE 54—PETITION ORDINARY—APRIL 25.

# Louisville & Nashville Railroad Company v. Ellis' Admr.

APPEAL FROM SHELBY CIRCUIT COURT.

1. RAILROADS—EJECTION OF DRUNKEN PASSENGER.—Where a passenger on a railroad train was put off for refusal to pay his fare, and was soon after struck and killed by another train on the same road, if at the time of the ejection from the train he was in such mental or physical condition from intoxication or other cause as rendered him incapable of caring for himself, and as to necessarily or probably expose him to danger of death or great bodily harm in being put off at the time and place and under the circumstances, and the officers or servants in charge knew of his then helpless condition, the railroad company is liable for the damages resulting, the wrongful act of the servants in charge of the train in putting him off under the circumstances being the proximate cause of the death.

2. SAME.—It was error to the prejudice of plaintiff to require the jury to believe, in order to find for her, that the servants in charge of the train knew that to put her intestate off the train at the time and place and in his then condition would "necessarily" expose him to danger from passing trains. It was sufficient that it would "necessarily or probably" expose him to danger. Nor was it necessary that plaintiff should show that the servant in charge of the train knew the danger to which the decedent would be exposed. If they knew the helpless condition of the decedent the conclusive presumption arises that they knew the consequences which would follow their acts.

3. EVIDENCE—RES GESTAE.—It was not competent for plaintiff to prove that the conductor said when he heard that a man had been killed on the track, that "he expected it was the man he put off the train," this declaration not being a part of the *res gestae*. And in view of the testimony of the conductor and of the issues in the case, this testimony was prejudicial.

J. C. BECKHAM & SON FOR APPELLANT.

1. The statement of the conductor made more than an hour after Ellis was put off the train was not a part of the *res gestae*, and

Louisville & Nashville Railroad Company v. Ellis' Admr.

was, therefore, incompetent. (McLeod, Receiver, &c., v. Ginther's Adm'r. 80 Ky., 399.)

2. Ellis by refusing to pay his fare or produce a ticket forfeited his right to ride upon the company's train, and he had no right to demand that he be put off at a station. Therefore, there was no liability upon the part of the railroad company, unless there was negligence upon the part of the servants in charge of the train by which Ellis was killed. (L. & N. R. Co. v. Logan, 88 Ky., 232.)

   Sullivan v. Louisville, &c., R. Co., 81 Ky., 624, distinguished.

3. Even if the company was negligent in putting Ellis off the train, that negligence was not the proximate cause of the injury and, therefore, there is no liability. (Lewis v. Flint & Pere Marquette Ry. Co., 18 Am. & Eng. R. Cases, 265; 19 Am. & Eng. R. Cases, 301; 16 Am. & Eng. Enc. of Law, 436; L. & N. R. Co. v. Johnson,, 47 Am. & Eng. R. Cases, 611; L. & N. R. Co. v. Lewis, 14 Ky. Law Rep., 770; Ham v. President, &c., Delaware, &c., Canal Co. 21 Atl. Rep., 1112; Elliott v. Chicago, &c., R. Co., 150 U. S., 247, Schaeffer v. Railroad Co., 105 U. S., 249; McClelland v. Louisville, &c., R. Co., 94 Ind., 277; s. c., 18 Am. & Eng. R. Cases, 261.)

P. J. FOREE AND L. C. WILLIS FOR APPELLEE.

1. The statement of the conductor complained of was not calculated to prove anything, except the impression the man's condition had made on his mind, and for that it was unquestionably competent. But even if not competent it was not prejudicial.

2. The court did not err in refusing the instructions asked by defendant.

   If a fellow passenger offers to pay the fare it is the duty of the conductor to receive it and carry the one in fault. (Wood's Railway Law, 1409; Ham v. President, &c., Delaware, &c., Canal Co., 21 Atl. Rep.)

   As the servants in charge of the train knew that Ellis was helplessly drunk when they exposed him to the perils that resulted in his death, the company will not be heard to say that the death would not have resulted had he not been drunk. (Isbel v. New York, &c., R. Co., 27 Conn., 393; Louisville, &c., R. Co. v. Sullivan, 81 Ky., 624.)

3. The instructions given correctly present the law of the case. A railroad company must exercise the right of expulsion in a lawful and proper manner, having due regard to the safety of the person ejected, and to the circumstances of time and place and the

physical condition of the person ejected. (Louisville, &c., R. Co. v. Sullivan, 81 Ky., 624; Atchison, &c., R. Co. v. Weber, 52 Am. Rep., 545; Conolly v. Crescent City R. Co., 17 Am. St. Rep., 389; Wood's Railway Law, 1435; Haley v. C. & N. W. R. Co., 21 Iowa, 15; 19 Am. & Eng. Enc. of Law, 907, 908.)

4. The correct measure of damages was given. (Ky. Cent. R. Co. v. Gastineau, 83 Ky., 127; Louisville, &c., R. Co. v. Case, 9 Bush, 737; 5 Am. & Eng. Enc. of Law, p. 45; Wood's Railway Law, p. 1539; Tilley v. Hudson River Co., 29 N. Y.)

5. The verdict is not excessive. (Tennessee, &c., R. Co. v. Roddy, 85 Tenn., 400; L. & N. R. Co. v. Shivell's Adm'r, 13 Ky. Law Rep., 905; L. & N. R. Co. v. Brook's Adm'rx, 83 Ky., 137; L. & N. R. Co. v. Mitchell,, 87 Ky., 337.)

J. A. SCOTT of counsel on same side.

JUDGE PAYNTER delivered the opinion of the court.

The administatrix of Stephen N. Ellis, deceased, brought this action against the Louisville & Nashville Railroad Company to recover damages, alleging that the decedent was a passenger on a train of the appellant on his way from Lexington, Kentucky, to Croppers; that the officers and agents of the appellant in charge of the train unlawfully, wrongfully, wilfully, and negligently ejected the decedent from the train while he was physically and mentally incapable of taking care of himself, and placed him in an exposed and dangerous position, where he was shortly afterward run over and killed by another train in charge of appellant's agents on the same line of railroad; that the deceased was lying unconscious upon the track when so killed.

The killing took place on the 2d day of September, 1892. The trial resulted in a verdict and judgment for appellee in the sum of eleven thousand dollars.

The undisputed facts are that on the morning of the day Ellis was killed he obtained a round trip ticket over the appellant's road from Croppers to Lexington, and that he got

aboard of the train from which he was ejected, which left Lexington going in the direction of Croppers.

On the trial of the case much testimony was offered by both sides, some of which was of a very contradictory character.

The appellee introduced a number of witnesses whose testimony tended to prove the following state of facts:  That the deceased was in Lexington on the day he was killed, and had been drinking very heavily; that he was about the depot in the evening before the train started in a very intoxicated condition; that a friend who was with him endeavored to keep him from getting on the train from which he was ejected, telling him it was not the train upon which they should return, and notwithstanding the effort to prevent him the deceased got aboard the train and left Lexington on it.

One witness, speaking of the condition of deceased just before he left Lexington, said "he was very drunk. He seemed to be almost in a lifeless condition.  He could walk about, but seemed to be not sensible at all."

Another witness said:  "I could see he was very drunk. They had hold of him holding him up." ·

Woodford Hughes was on the train from which Ellis was ejected, and in speaking of his condition said:  "He was very drunk, staggering around, sitting around sometimes, and getting up, falling around first against one man and then against another."

Other witnesses testified as to his drunken condition, but to whose testimony it is unnecessary to invite especial attention.  Viley's Station is a short distance from Lexington.

Witnesses testified that the deceased was not put off at that station, but that he was carried four hundred or five hundred yards beyond the station, and put off in a cut; that

there was a ditch along the track, and the testimony tended to prove that there were considerable banks on either side of the track where he was put off, fences on either side and no outlet at that point from the track.

The testimony introduced by appellee conduced to prove that deceased was very drunk when put off, and was left standing near the track, stooped over and acting in a way which indicated that he did not know what to do. It is in evidence that one passenger appealed to the conductor not to put deceased off in "that condition but take him to a station."

There was proof that the Chesapeake & Ohio express train, which uses the road of the appellant, was to soon follow the train upon which the deceased had taken passage.

The testimony in the record shows that the train from which deceased was ejected left Lexington 6:03 p. m. The express train just mentioned was due to leave Lexington at 6:35 o'clock, but left six or seven minutes late.

The appellant introduced a number of witnesses tending to prove that the deceased was put off the train at Viley's Station on the opposite side of the road from the station; that the deceased was able to and did walk off the train himself; that he was not so drunk as to be incapable of taking care of himself.

It introduced testimony tending to prove that the first blood was seen on the track at a point two thousand nine hundred and twenty feet from Viley's, in a cut, from which appearance it is argued that that is the point where the train struck the deceased.

It is claimed for the appellee that the deceased when ejected from the train was physically and mentally incapable of taking care of himself, and that he was put off in a

cut some distance from a station, an unsafe place; that the officers and agents knew his condition when they ejected him; that the deceased was quiet and not disturbing the passengers, and that a passenger offered to pay his fare before he was put off; that the deceased was killed by a train which followed in a few minutes the one from which deceased was ejected, and that officers and agents of appellant knew the fact when they ejected the deceased; that deceased was killed by this train.

For the appellant it is claimed that the deceased was put off at one of its stations for his failure to produce a ticket or pay his fare on the demand of the conductor; that the deceased was not so drunk as to be physically or mentally incapable of taking care of himself; that when he was ejected he was placed at a reasonably safe distance from passing trains, and that the appellant is not liable in damages for killing the deceased, as it is not responsible for deceased coming on the track, and the proof showing that the officers and agents in charge of the train that killed Ellis did not discover his peril and could not have prevented the killing by the exercise of reasonable care after discovering him on the track.

There is no evidence in the record tending to show that the officers or agents in charge of the train which is believed to have killed Ellis were guilty of any negligence whatever. If appellee is entitled to recover from the facts developed in this record it must be on account of the conduct of the officers or agents of the train from which the deceased was ejected.

A number of instructions were offered by counsel for appellant and appellee, all of which were refused by the court. The court then gave the jury three instructions, the effect of which was that the jury could not find for the appellee,

unless the jury believed from the evidence that at the time
the deceased was ejected from the train he was in such a
state of intoxication as to render him mentally or physically
incapable of taking care of himself, and in such helpless
condition that to put him off the train at the time and under
the circumstances, and in the place where he was ejected,
would, necessarily, expose him to danger of death or great
bodily harm from passing trains, and that appellant's
agents in charge of the train at that time knew the then help-
less condition of the deceased and the danger to which he
would be exposed by being then and there ejected from the
train, and that they at that time and under the circum-
stances, and in the place where he was ejected, and with the
knowledge of such helpless condition, forcibly, wilfully and
negligently ejected him from the train; and that he was
shortly thereafter, while so mentally and physically unable
to take care of himself, and in such helpless condition, run
over and killed by another train in charge of appellant's offi-
cers or agents.

The instructions given by the court recognize the right
of the appellant to eject deceased when he failed to pro-
duce a ticket or pay his fare, unless some one else offered
to pay and tendered his fare, and which offer and tender
was refused by the conductor.

By the instruction, No. 3, which the court gave the jury,
the recovery was confined to compensatory damages.

Instruction No. 1, offered by counsel for appellant, told
the jury, in substance, that if the decedent failed to pro-
duce his ticket or pay his fare the conductor or other agent
or servant of the appellant had the right to eject him, using
no more force than was necessary for the purpose, and if
the decedent was placed so far from the track that he was
then out of danger of passing trains, and that he afterwards

went upon the track and was killed by another of appellant's trains, the jury should find for the appellant, unless they further believed that appellant's officers and agents in charge of the train that killed decedent discovered his peril, and could have prevented the killing by the exercise of reasonable care after discovering him on the track. It is insisted that this instruction should have been given to the jury.

This contention brings us to the consideration of the question as to the right of the appellant's officers or agents in charge of a train to eject one who is not imperiling the safety of the passengers, but who has forfeited his right to ride upon the train, regardless of the time, place, and circumstances, and his physical and mental condition.

Under this instruction the jury could not find against the appellant if they believed that the decedent was placed so far from the track that he was then out of danger of passing trains, and he afterwards went upon appellant's track and was killed by another train, unless they believed that the officers and agents in charge of such train discovered his peril, and could have prevented the killing by the exercise of reasonable care after discovering him on the track. This instruction assumes that the agents of appellant had the right to eject decedent, regardless of the time, place, circumstances, and his physical and mental condition. This certainly is not the law in this State.

It seems to us that the ordinary principles which characterize humanity condemn such claim. If the claim of appellee be true that the decedent was ejected in a cut, away from any station—with banks and fences on either side of the track—in such mental or physical condition as rendered him incapable of taking care of himself, the officer with a knowledge of his condition, then it was no less wrong to eject decedent under such circumstances than it would have

been to have ejected from a train a toddling child who had not mental capacity to know the danger of walking upon a railroad track, or the physical ability to avoid such danger if it had the mental capacity to discern it. Would any one contend if appellant should kill a child under such circumstances that it would not be liable to damages therefor?

The fact that the deceased by his own act became intoxicated to the extent which rendered him incapable of taking care of himself does not release the appellant from liability for the acts of its officers and servants in ejecting him. The intoxication of the decedent is the remote but may not be the proximate cause of the killing.

While the facts of this case differ somewhat from those of the case of Louisville, Cincinnati & Lexington R. Co. v. Sullivan, 81 Ky., 624, the principles enunciated in that case are applicable to this one. Sullivan was ejected from a train in freezing weather, while in a helpless condition, resulting from intoxication, and as a result his feet, hands, and other parts of his body were frozen, causing suffering and the amputation of his toes, etc.

The court in the Sullivan case said: "But about one hour and a half afterwards (referring to the time of plaintiff's expulsion), near the time for the train going toward Christiansburg to pass, and about two hundred and fifty yards toward Croppers from the place where the conductor testifies he was put off the train, he was discovered by one of the witnesses lying across the track helpless and nearly unconscious, with a quart bottle nearly full of whisky, who pulled him off the track, but being unable to remove him from the place left him."

Suppose the train which was to soon pass going to Christiansburg without any negligence of those in charge of it should have run over and killed Sullivan, and the action had

been for the damages resulting from the killing, can any one doubt that the court in that case would have held that the railroad company was liable?

The killing would have been as proximately the result of the wrongful act of expulsion as was the injury by freezing.

In the case of Louisville & Nashville R. Co. v. Logan, 88 Ky., 241, the court said: "There might be a case where a railroad company would be guilty of willful neglect, in the meaning of the statute, by ejecting without imperative necessity a passenger so drunk as to be helpless, when his death would naturally and probably result from agencies other than his own act then present and impending."

In the Logan case *supra* the court very properly held that the railroad company was not liable for the killing, as the deceased remaining on the train imperiled the safety of the passengers, but his condition was not such as indicated to the officers and agents in charge of the train that he was incapable of taking care of himself.

Gill v. Rochester & Pittsburgh R. Co., 37 Hun. (N. Y.) 107, was an action to recover damages ensuing from the death of the plaintiff's intestate, Arthur O. Gill, alleged to have been caused by the negligence of defendant in ejecting him from its train.

The deceased was a passenger on the defendant's train that left Le Roy, running westwardly, at about half past seven on the evening of Saturday, 24th of February, 1883. For failing to produce a ticket or pay fare the train was stopped and he was put off at a point something over a mile distant from the Le Roy station and 115 rods from the nearest accessible dwelling house. The night was dark, cold and stormy. As the train moved away the deceased was seen standing or leaning against the bank of the cut.

No witness spoke positively of having seen him after that

until the following Monday morning, when his dead body was found on the opposite side of the track from which he was put off, lying in partially frozen mud and water.

The immediate cause of his death was suffocation or drowning.

To establish the liability of the defendant two theories were presented by the plaintiff: First, that the deceased was put off with unnecessary violence, and was so stunned or paralyzed thereby as to be incapable of taking care of himself; and secondly, that he was so intoxicated as to be incapable of caring for himself to the knowledge of the conductor when he was put off the train.

Testimony was introduced tending to sustain the contention of plaintiff. The court said: "Upon either theory presented to the jury, whether the deceased was incapacitated from caring for himself by intoxication or by a paralyzing stun, if he was in fact so incapacitated and so continued until he perished, we think his ejection from the cars, under the circumstances, must be regarded as the proximate cause of his death. By reason of his incapacity no voluntary and conscious act of his own could intervene between the origi-. nal cause and the final result, and the case is the same in legal effect as if, when ejected from the car, he had been thrown into a pool of water and instantly drowned." (Conolly v. Crescent City R. Co., 41 La. Ann., 57; s. c. 17, Am. St. Rep., 389; Haley v. C. & N. W. R. Co., 21 Iowa, 15; Atchison, Topeka & S. F. R. Co. v. Weber, 52 Am. R., 545.)

We are of the opinion that if the deceased was ejected from the train when he was in such mental or physical condition from intoxication or other cause as rendered him incapable of caring for himself, and the officers or agents in charge of the train knew of his then helpless condition, and to put him off the train in such condition at that time and

under the circumstances, and in the place where he was ejected, would necessarily or probably expose him to danger of death or great bodily harm from passing trains, and that while in such condition he was, shortly after his expulsion, run over and killed by a train on the road of appellant, the appellant is liable for the damages resulting, for killing him. It follows from this view of the case that the court did not err in refusing the instructions offered by counsel for appellant, nor did the court err to its prejudice in instructing the jury.

The instructions given were more favorable to the appellant than it was entitled to, in using alone the words "necessarily expose," etc. It should have been said "necessarily or probably," etc.

In referring to the ejection of the deceased, language was used in the instructions as follows: "That defendant's agents in charge of said train at that time knew the then helpless condition of the deceased *and the danger to which he would be exposed by being then and there ejected from said train.*"

So much of these instructions as required the jury to believe from the evidence that the agents in charge of the train knew of the helpless condition of deceased when they ejected him is correct.

But in so far as they required appellee to prove that such agents knew the results which would necessarily or probably follow from the act of expulsion, they are incorrect. If the helpless condition of the deceased at the time of his expulsion is shown, and that the agents in charge of the train knew of it when they so expelled him, the conclusive presumption follows that they knew the consequence which would follow such acts. Otherwise, it would be a most difficult task to hold a party liable for a tort. It would, in many cases,

be impossible to prove the party who was charged with the wrongful act knew what would result from it.   And from the criticism we have made upon the instructions given by the court, we think they state substantially the law of the case.

There was an error committed to the prejudice of the appellant, which makes necessary a reversal of the case.

Woodford Hughes was introduced as a witness for the appellee, and, over the objection and exception of counsel for appellant, gave testimony as follows:

By counsel for appellee:   "I will ask you if any member of that train was present when you talked with the policeman at Frankfort?"

A. "The conductor was there."

Q. "Fitzgerald?"

A. "Yes, sir."

Q. "Tell what was said."

Question objected to by defendant.   Objection sustained.

Q. "I will ask you if when you got to Frankfort you got any announcement that a man had been killed back up the road?"

A. "Yes, sir."

Q. "How did you get the news?    Don't tell what was said, but tell the manner of getting it.   Was it a telegram, do you know?"

A. "I don't know how; whether there was a telegram or not; but I heard them say there was a man killed."

Q. "I will ask you whether at that time you heard the conductor make any statement as to who he thought it was?"

Question objected by defendant.   Objection overruled, to which defendant by counsel excepted.

A. *"He said he expected it was the man he put off the train."*

This testimony is incompetent.   It was no part of the *res gestae.*   The conductor is the agent of the appellant for the purpose of operating the train.   No statement or declaration of his can bind the appellant, except it was made under such circumstances as to make it a part of the *res gestae.*

The court in the case of McLeod, receiver, v. Ginther's Adm'r, 80 Ky., 399, held the statements of the conductor were admissible as part of the *res gestae,* which were made in a few seconds after the accident which resulted in the death of Ginther, and in view of the wrecked train and amidst the search for persons whose fate was then unknown.   The court in McLeod v. Ginther's Adm'r, *supra,* said:

"The general rule is that all declarations made at the same time the main fact under consideration takes place, and which are so connected with it as to illustrate its character, are admissible as original evidence, being what is termed a part of the *res gestae,* in other words, a part of the thing done."

The declaration in question was not made at the time of the expulsion, nor at the time of the killing, but a considerable time afterward.

The declaration of the conductor as proven by Hughes was introduced as original evidence.

Doubtless, the jury regarded it as tending to contradict the testimony of the conductor when he says he put deceased off the train at Viley's, and also when he says that the deceased was not in the helpless condition as claimed by appellee.   The jury may have regarded it as an acknowledgment of the conductor that he knew the deceased was in a helpless condition when ejected.

The court can see how counsel for appellee could have used it in argument effectively.   It may have weighed heav-

ily with the jury in reaching its conclusion as to the condition of the deceased when expelled, and as to the knowledge of the conductor as to such condition.

It is fair to conclude that the jury was, in no small degree, influenced by the testimony in making up their verdict, as they would naturally reason that the conductor would not have "expected" the man he put off the train to be killed if he had put him off at a station and in a condition wherein he was capable of taking care of himself.

The statement of the conductor not being part of the *res gestae* was incompetent evidence, and it was an error of the court in allowing it to be proven.

Wherefore the judgment is reversed with directions that a new trial be granted, and for further proceedings consistent with this opinion.