CASE 7—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S
    INTESTATE—NOV. 26.

# Bohannon's Admx. v. Southern Ry. Co. in Kentucky.

### APPEAL FROM SHELBY CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    AFFIRMED.

CARRIERS—EJECTION OF DRUNKEN PASSENGER IN HELPLESS CONDITION—
    LIABILITY FOR SUBSEQUENT INJURY.

Held:   1. In an action against a railroad company to recover dam-
        ages for the death of a passenger after he was put off the train
        at a dangerous place, plaintiff can not complain of an instruc-
        tion telling the jury to find for him if they believe his intes-
        tate was on one of defendant's trains "in such a state of in-
        toxication as to render him mentally or physically incapable of
        caring for himself, and defendant's agents or servants in charge
        of said train knew his helpless condition and his inability to care
        for himself, and with such knowledge negligently ejected him
        from said train at a time and place and under such circum-
        stances as to necessarily or probably endanger his life by pass-
        ing trains," as defendant is liable for putting the passenger off
        at a dangerous place only in the event he was put off against
        his will, or when he was in such mental condition that he was
        incapable of having a will.

2. The word "ejected" does not imply the use of force, and there-
   fore the instruction did not require the jury to believe, in or-
   der to find for plaintiff, that his intestate was put off by force.

3. If the passenger entered the train knowing it did not stop at the
   station nearest to his home, but did stop at a coal chute which
   was nearer to his home than the station, the coal chute must
   be regarded as his destination; and therefore the court properly
   instructed the jury to find for defendant if they believed that
   plaintiff's intestate knew the train did not stop at the station,
   but did stop at the coal chute, and that he left the train at
   the chute of his own free will, whether assisted or unassisted,
   as in that event he assumed the dangers of the locality.

JAS. ANDREW SCOTT, P. J. FOREE AND HAZELRIGG & CHEN-
    AULT FOR APPELLANT.

    The testimony in this case conduced to show that on May 21,
1898, Richard Bohannon, who had been drunk in Shelbyville

all day, and while in a helpless condition from intoxication boarded appellee's passenger train at Shelbyville, near where he lived; that the train which carried him did not stop at Hempridge station, where he desired to go, but at the coal chute, in a deep cut some 400 or 500 yards beyond said station, where he was put off by those in charge of the train at 9 o'clock at night, where there was nobody to look after him, and where he was shortly afterwards cut in pieces by another train, several hundred feet eastward of where he was put off, and in the direction of his home.

These facts were substantially alleged in the petition. The answer was a denial of these averments, with a plea of contributory negligence, and no other issues were made by the pleadings.

The court, over the objection of the plaintiff, gave the following instruction (No. 5):

"The court instructs the jury, if they believe from the evidence that defendant's train, on which plaintiff's intestate, Richard Bohannon, took passage, at the time of the alleged injury, did not usually, or by the rules of defendant company, stop at Hemp Ridge station, but did usually and continuously stop at the coal chute, and that passengers on said train left said train at the coal chute, and these facts were known to the plaintiff's intestate, and he left the train at that point of his own free will, whether assisted or unassisted by defendant's employes, they should find for defendant."

We claim that there was no issue in the pleadings to authorize this instruction, and therefore it was error to give it.

By instruction No. 1, over the objection of the plaintiff, the right of recovery was based on the ground that deceased, in his drunken condition, was negligently ejected.

There was in terms no definition of negligence given, but in the 6th instruction, given over plaintiff's objection, the right of recovery is denied, if there was no ejection of the deceased "against his will," or there was such an ejection by his request or acquiescence.

The two instructions, taken together, therefore, mean, that although the man was drunk and helpless, yet it was not negligence to put him off, if it was not done against his will, but was done at his request.

We feel sure that this is not the law of this case.

### AUTHORITIES CITED.

Brown's Adm'r v. L. & N. R. R. Co., 19 R., 1873; L. & N. R. R. Co. v. Ellis, 97 Ky., 332; Atchison, Topeka & Sante Fe v.

Webber, 33 Kan., 543; Galena v. Hot Springs R. R., 13 Fed.
R., 116; C., I., St. L. & C. R. R. Co. v. Cooper's Adm'r, 120 Ind.,
469; L. & N. R. R. Co. v. Thompson, 18 B. Mon., 744; Henry v.
L., C. & L. Ry. Co., 3 R., 695; Henderson Hominy Mill Co. v.
Watkins, 15 R., 301; Grogan v. Allen, 5 R., 251; Louisville Ry.
Co. v. ————, 96 Ky., 580; Bogenschutz v. Smith, 84 Ky.,
330; C. & C. Bridge Co. v. Branan, 16 R., 126; Flood v. Progroff,
79 Ky., 607; Stokes, Ex'r, &c. v. Sheppen, 13 Bush, 180; C. &
O. Ry. Co. v. Judd's Adm'r, 19 R., 1978; Connelly v. Crescent
City R. R. Co., 17 Am. St. Rep., 389; Wood on Railroads, p.
1435; Gill v. Rochester & P. R. R. Co., 37 Hun. N. Y., 107; L.
& N. R. R. Co. v. Miles' Adm'r, 97 Ky., 330; Fogg's Adm'r v.
L. & N. R. R. Co., 23 R., 383.

WILLIS & WILLIS, ATTORNEYS FOR APPELLEE.
ALEX. P. HUMPHREY OF COUNSEL.

The station of Hempridge is eight miles east of Shelby-
ville, an ordinary country shipping point. About 400 yards east
of Hempridge station is a coal chute, at which *all* trains of the
Kentucky division of the company take coal. The chute is lo-
cated on the side of a hill, and the coal is dumped into the
tender from the chute.    The cut is neither deep nor very long
nor is it a wild or rough country.    The evidence shows that
at all hours, day and night, two or more men are at work at
it, and at all hours at night there are numerous lights, both
stationary and moving, on and about it.

Appellee's "fast train" did not stop at Hempridge, but al-
ways stopped at the coal chute to take coal.    It made only
three stops for the purpose of discharging or receiving passen-
gers between Louisville and Lexington, viz., Shelbyville, Law-
renceburg and Versailles.

The record shows beyond dispute that it was the custom of
a great number of persons living in the neighborhood of Hemp-
ridge to take this late train, pay their fare if demanded and
leave the train at the coal chute, as the train always stopped
there from three to five minutes to take coal.    This fact is fur-
ther shown to have been well known to the appellant's intestate,
who lived immediately upon appellee's line of road, about 1,000
yards east of Hempridge, and about five or six hundred yards
east of the coal chute.    Deceased was a man of convivial habits,
always drank when he had money, good natured and agreeable.
On the evening of May 21st, he was under the influence of
liquor, not drunk to the extent of being unable to take care of
himself.    All the evidence shows that he was not mentally
incapable of taking care of himself.    When he reached the coal

chute he rose from his seat unsolicited, unassisted and without the direction of any one and according to the evidence of every one except the negro man Sheets, he walked off of the train and stood back out of the way of the train until it left.

Under this state of facts it can not be said that the court erred to the prejudice of the appellant in the instructions given to the jury.

The only error the court made was in failing to give the jury a peremptory instruction to find for the defendant.

### AUTHORITIES CITED.

L. &. N. R. R. Co. v. Ellis' Adm'r, 97 Ky., 330; L., C. & L. R. Co. v. Sullivan; 81 Ky., 624; L. & N. R. R. Co. v. Logan, 88 Ky., 241; L. & N. R. R. Co. v. Wolfe, 80 Ky., 82.

OPINION OF THE COURT BY JUDGE WHITE—AFFIRMING.

This is an action for damages for the death of Richard Bohannon. The averments of the petition are that de-decedent was a passenger on appellee's regular passenger train from Shelbyville to Hempridge stations, and that when decedent entered the train at Shelbyville he was in-toxicated, and in a helpless condition, both mentally and physically, and unable to take care of himself; that of his condition the servants and employes on the train had knowledge; and that when his station (Hempridge) was reached the train was not stopped, but that the servants and agents in charge of the train wrongfully and negligent-ly carried decedent some 500 yards past his station, and there ejected him, at 9 o'clock at night, in a cut, and there left him with no person to look after or care for him, and being thus necessarily exposed to constant danger from passing trains, and where he was within a few hours run over and killed by another of appellee's trains. The an-swer denies that Bohannon was a passenger from Shelby-ville to Hempridge; denies that he was in a helpless con-dition, either mentally or physically; denies that its ser-vants ejected decedent from its train at all at any time or

place. Indeed, the answer is a specific denial of each averment of fact in the petition, except the existence of appellee as a corporation. The second paragraph pleads that Bohannon lost his life solely on account of his own negligence. The answer was controverted of record. A trial resulted in a verdict and judgment for defendant, and hence this appeal.

The facts proven appear to be that Bohannon lived east of Hempridge station some distance, and got on appellee's train at Shelbyville a few minutes after 9 o'clock p. m., for the east. This train as the testimony shows, never stopped for passengers at Hempridge station, but that it always stopped at a coal chute some 500 yards east of Hempridge, at which point it was due at 9:21 p. m. This coal chute is in a long cut, about 10 to 14 feet deep; and one chute is near the western end of the cut, another nearer the eastern end of the cut. Westward from the cut there is a high fill across a ravine, so that between cut and fill for a short space the railroad is on a level with the natural surface. It is shown that on the night Bohannon was killed he had no ticket—could buy none for Hempridge. He paid his fare to the conductor. It is also shown that he was acquainted with the fact that this train did not stop at Hempridge station, but did stop for coal at the chute, which place was 500 yards nearer to his home, as he lived east of the chute and near the railroad. It was also shown that in going from home to the station to take the train, or in going from Hempridge to his home, decedent usually walked along the railroad track through the cut where the coal chutes were located. Bohannon was shown to have been intoxicated when he got on the train at Shelbyville, and drank more while on the train. He knew he was going home. He talked to those about him like the

usual talkative drunken man. The train did not stop at
Hempridge, but did stop at one of the coal chutes—which
one, is not certain from the proof. When the whistle
blew for the chute, Bohannon got up out of the seat,
and when the train stopped got off or was put off the train.
There were other passengers who got off at the chute.
Bohannon was seen by two persons after the train left.
He was going along the railroad eastward, towards his
home. His remains were picked up along the railroad,
where they had been scattered after being cut to pieces
by a train following the passenger, some two hours behind.
By blood marks on the track it is shown that he was struck
at the east end of the cut in which he left the train. The
evidence shows that Bohannon was on the train about 15
minutes, that being the time necessary to run from Shelby-
ville to the coal chute. It was shown that passengers in
the neighborhood of Hempridge got on and off this fast
train at the coal chute, and never at the station, because
this train did not stop at the station. We are of opinion
that the evidence shows conclusively that Bohannon was a
passenger on appellee's train from Shelbyville to the coal
chute, and that when he got on the train at Shelbyville he
knew that the train did not stop at Hempridge station,
but it would stop at the coal chute. As the coal chute was
nearer his home than the station, it is very evident that
Bohannon's destination was the coal chute, where the train
stopped and he was put off or got off. The time of his
killing was in May, and so there was no danger from injury
from the weather. The court gave instructions to the
jury, of which appellant complains of Nos. 1 and 4. No. 1
reads: "If the jury believe from the evidence that on or
about May 21, 1898, plaintiff's intestate, Richard Bohannon,
was on one of defendant's trains running from Shelbyville

to and beyond Hempridge station, in such a state of in-
toxication as to render him mentally or physically incapa-
ble of caring for himself, and defendant's servants or
agents in charge of said train knew his helpless condition,
and his inability to care for himself, and with such knowl-
edge negligently ejected him from said train at a time and
place and under such circumstances as to necessarily or
probably endanger his life by passing trains, and shortly
thereafter said intestate was killed by one of defendant's
trains, they should find for plaintiff in damages." Instruc-
tion No. 4 is the counterpart of this No. 1, telling the jury
that, unless they believed those facts, they should find for
the defendant. A verdict and judgment resulted in favor
of defendant, and hence this appeal.

Objection is made to the use of the word "ejected" in
the instructions, counsel arguing that this means forcibly,
and against the desire of Bohannon. It seems to us that
the word "ejected," as used, means that Bohannon was
forcibly put off the train, rather than helped off according
to his desire, or that he voluntarily left the train. To eject
a person means to compel him against his desire to leave
the car. So that the jury was told that, if Bohannon was
compelled to leave the car, and placed or left in a necessar-
ily or probably dangerous place, a recovery could be had,
but, unless he was compelled to leave, appellee would not
be liable. In other words, the jury was told that, if Bo-
hannon voluntarily left the car, or was, according to his
desire, assisted from the car, at the time and place, appel-
lee was not liable for his death. We are of opinion that
these instructions fairly state the law. If decedent left
the train of his own will, appellee would not be responsi-
ble for the peril he voluntarily placed himself in. If he
was put off against his will, or put off when he had no

will, because of his mental condition, appellee is to be held responsible for the peril in which he is placed. The jury were to determine from the evidence whether Bohannon desired to get off at the chute, and also whether at that time his mental condition was such as to know what he wanted. These facts the jury determined favorable to appellee, and it seems to us this finding finds support in the evidence.

Appellant also complains of instruction No. 5 given by the court; which told the jury to find for defendant if they believed that Bohannon knew the train did not stop at Hempridge, but did stop at the chute, and that he left the train at the latter point of his own free will, whether assisted or unassisted. This is on the idea that when Bohannon got on the train he knew he would get off at the chute, and when he reached that point he was at his destination, and got off the train of his own will. If he knew that he could not get off at Hempridge, but must get off at the chute, that was his destination—the chute was his station—and to that place it must be held the contract of carriage extended and ended. Under this state of case, the only question to be considered was the mental and physical condition of Bohannon. If he left the train of his own free will, it was his privilege and right, and he assumed the risk of injury from passing trains. If Bohannon was mentally incapable of having a will, and was put off the train at this time and place, and it was dangerous, appellee assumed the risk of injury; and the jury was told in instructions Nos. 1 and 4 to find for the appellant if decedent was ejected. Instruction No. 5 only eliminates the time and place where Bohannon was put off or got off, if the jury concludes a certain state of facts to be true.

The question of whether decedent was ejected was submitted to the jury by instructions Nos. 1 and 4. We conclude that the instructions given fairly state the law of the case.

Counsel for appellant have referred us to a number of cases to sustain their position—those of this court as well as courts of other States. All these we have carefully considered, and find that in no case was the question considered or decided that a carrier was liable where a passenger had gotten off or been put off at his destination. The cases cited (Railroad Co. v. Weber, 33 Kan., 543, 6 Pac., 877, 52 Am Rep., 543; Conolly v. Railroad Co. [La.] 5 South., 259, 6 South., 526, 3 L. R. A., 133, 17 Am. St. Rep., 389; Gill v. Railroad Co., 37 Hun, 107; Railroad Co. v. Ellis' Adm'r, 97 Ky., 330 (17 R., 259), 30 S. W., 979; Brown's Adm'r v. Railroad Co. [103 Ky., 211; 19 R., 1873], 44 S. W., 648; and the recent case of Fagg's Adm'r v. Railroad Co. [111 Ky., 30; 23 R., 383], (63 S. W., 580), where all the authorities are reviewed) where a recovery was permitted where a passenger had been ejected from the train and placed or left in a dangerous place, and injury or death resulted as a necessary or probable consequence. It could scarcely be contended in the case at bar, if the trains had stopped at Hempridge station, and that was where Bohannon intended and expected to get off, and that at that station he left the train voluntarily, whether assisted or unassisted, that appellee would be liable for his death because he was afterwards killed. We can see no difference from that supposed case than the facts here, if the coal chute was Bohannon's destination. That question was properly submitted to the jury. If the coal chute was selected by Bohannon as the point of his destination, where his contract of carriage should terminate, it must

be held that he assumed the dangers of the locality if he left the car voluntarily at that point.

Every question of fact upon which appellant could recover was submitted to the jury, and their finding can not be disturbed.   Judgment affirmed.