CASE 69.—DEATH ACTION BY MINNIE CUNNINGHAM ADMINISTRATRIX OF D. C. CUNNINGHAM, DECEASED, AGAINST THE AYER & LORD TIE COMPANY.—April 30, 1909.

## Cunningham v. Ayer & Lord Tie Co.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

From a directed judgment for defendant, plaintiff appeals.—Affirmed.

Negligence—Duty Towards Licensees—Drunken Persons.—The captain of a steamboat moored to a bank sent an employe to fetch decedent to do some work on the boat. Decedent had been drinking, but was not drunk, and voluntarily started for the boat with the employe. On the way they visited a saloon, took a drink, and decedent bought a bottle of whisky. When they reached the boat, another had been engaged to do the work, but decedent remained on the boat, and, after

Cunningham v. Ayer & Lord Tie Co.

drinking from his bottle, attempted to pass from one part of the boat to another along a narrow passageway, and fell into the river and was drowned. Held, that in view of the fact that the boat was moored to the bank, and that decedent was not in such a drunken condition that his mentality was impaired, those in charge of the boat were not required to guard him to prevent his falling overboard and the owner was not liable for his death.

HENDRICK, MILLER & MARBLE for appellant.

UPON THE FACTS APPELLANT CONTENDS.

1. Appellee for its own purposes in the course of its business having negligently and wrongfully taken the plaintiff's decedent from a place of safety, and while he was in a helpless, delirious and irresponsible, drunken condition, and negligently placed and left him in a situation where he would necessarily or "probably" be exposed to danger of death or serious bodily harm, and his death having been caused from this very danger to which he was thus exposed, appellee is liable in damages therefor. (C. N. O. & T. P. Ry. v. Marr's 27 R. 388; 85 S. W. 188; Fagg's Adm'r v. L. & N. R. R. Co., 111 Ky. 30; 68 S. W., 580, 54 L. R. A. 919; Haug v. G. N. Ry., 8N. D 23, 42 L R. A. 667; L. & N. Ry Co. v. Ellis, 97 Ky. 330, 30 S. W. 979.)

The decedent was not a trespasser but if he had been, the liability would still remain. (C. N. & T. P. v. Marr's &c. Supra.)

It is not necessary for appellant to show by proof that appellee or its agents knew the danger to which decedent would be exposed but in the language of the opinion in the case of L. & N. R. R. Co., v. Ellis' Adm'r., "If the helpless condition of the deceased at the time" he was taken to the place of danger is shown and that the agents of appellee knew of that condition at the time they so took him and left him on the boat "The conclusive presumption follows that they knew the consequences which would follow such acts." (See page 341 of the opinion, 97 Ky. for the language quoted.)

Nor did the proof have to show that the conduct of appellee's agents would necessarily expose decedent to the danger but it would "necessarily or probably" expose him to death or great bodily harm, appellee would be liable. (Same page of same opinion.)

2. Appellant contends trial court erred in excluding the testimony of witness Kopf and the colored men to the effect that they called attention of appellee's agents to the drunken condition of the decedent at the time they were putting him in the skiff, and warned them that he would be drowned, what was said at the time was part of the Res Gestae. (L. & N. R. R. Co. v. Ellis, 97 Ky. 330; L. & C. Packet Co. v. Samuel's Adm'r. 22 R. 1477.)

These cases show the remarks of bystanders are admissable as part of the circumstances and transactions. (See also Dill's v. May, 3 R. 765; L. & N. R. R. Co., v. Pilkerton, 15 R. 607.)

C. C. GRASSHAM for appellee.

WHEELER, HUGHES & BERRY of counsel.

POINTS AND AUTHORITIES.

1. No greater duty was owing to appellant's decedent, though he was intoxicated, than would have been to a sober person of ordinary prudence under like circumstances. Hutchinson on Carriers, Sec. 1230; Thompson on Negligence, Sec. 340; City of Covington v. Lee, 89th S. W. 493; 28th Rep. 492; I. C. R. R. Co. v. Proctor, 89th S. W. 714; 28th Rep. 598; L. & N. R. R. Co. v. Cummins' Adm'r. 63rd S. W. 594; 111th Ky. 333.

2. Appellee is not liable to appellant for the acts of Lord and "Nimmo" or either, in permitting decedent to go on the company's premises in a drunken condition; nor is it responsible for their drinking with him. "Nimmo's" conduct in drinking with him and the acts of either beyond carrying the message for him to complete his work that he had begun was without authority, direct or implied, for the consequences of which appellee is not liable. Ferguson v. Terry, 1st B. Mon. 97; Sherley v. Billings, 8th Bush 151; Winnegar's Adm'r. v. Cen. Pas. R. Co., 85th Ky. 552; Sullivan v. L. & N. R. R. Co., 24th Rep. 2344; 74th S W. 171; Lacket &c. v. Lutz, 94th Ky. 287.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Appellant instituted suit in the McCracken Circuit Court wherein she sought to recover damages for the death of her husband, who fell from the steamer Margaret in June, 1907, and was drowned. The petition alleged that his death was due to the negligence and carelessness of the employes of appellee in taking him to and upon said boat, and leaving him unattended in a place of danger while he was in a drunken and practically helpless condition. Appellee answered, denying liability, and pleading contributory negligence as a defense. In a reply the affirmative matter in the answer was traversed, and upon the issue thus joined the case was submitted to a jury. At the close of appellant's evidence a peremptory instruction was given to find for defendant, which was done. From the judgment predicated upon this verdict, this appeal is prosecuted.

Appellee was the owner of the towboat Margaret, which was then undergoing repairs at the wharf or

landing on the river front opposite Paducah. The services of a brick mason were needed to lay the furnace work, and D. C. Cunningham, being skilled in that line, was called upon by the agents of appellee to render this service. The facts as brought out in the evidence, and upon which appellant relies, as shown by the record, are as follows: The said boat was to be inspected at 2 o'clock on the day upon which deceased was drowned. On the morning of that day Capt. Baker directed Joe Lord, one of their employes, to find or get Daniel Cunningham, or Uncle Dan, as he was commonly called, and have him complete the brickwork around the boiler. It appears that Nimmo, another employe, heard this order delivered, and whether on his own initiative, or under the direction of Lord, to whom the message was delivered, he set out to find Uncle Dan. He located him at his own home, asleep. He had been drinking, and Nimmo was so notified by Mrs. Cunningham. She aroused her husband, and he and Nimmo went into his kitchen, where they each took a toddy, and Mrs. Cunningham stated, in substance, to Nimmo that if her husband was kept away from liquor, and not allowed to drink any more, he would be all right. He was not drunk at this time, though drinking. Together they walked from his home to the river, and on the way passed a saloon, in which they took a drink of beer, for which Uncle Dan paid, and he also purchased a pint of whisky in this saloon. From there they went on to the river, where they met Lord. While waiting for a boat to take them across the river, Uncle Dan stumbled or staggered into the water, although he did not fall. He was taken out, and they all got into a boat, and together went across the river to the Margaret. When they went upon the boat,

they found that the services of another brick mason had been secured, and that Uncle Dan was not needed. They went back into the boiler room where the work either had been or was being done, and Uncle Dan took another drink of whisky from his bottle. Some time thereafter, just exactly how long it is not clear, while attempting to walk from the boiler room to another part of the boat along a passageway something less than three feet in width, he fell into the river and was drowned.

For appellee it is insisted that, conceding all that appellant claims, she has failed to make out a case; that none of the authorities relied upon by appellant are in point, or support her contention; that the relation of master and servant did not exist between appellee and deceased, but that, at most, he was a mere licensee, that he was invited or requested to go over to appellee's boat and perform certain services; that he accepted the invitation and accompanied the servant of appellee from his home to the river, and was there by appellee provided with a means of conveyance over to the boat; that he was so long in reaching the boat that appellee had procured the services of some one else to do the work, and hence did not employ deceased; that at this time, although drinking, and to some extent under the influence of liquor, the proof does not show that deceased was in the condition as he is described in the pleadings, to-wit, drunk and helpless, but, on the contrary, he was able to go about, and, as far as could be observed, knew what he was doing. He was familiar with boats, it appearing in the evidence that he was skilled in the line of business for which his services on this occasion were sought, and, while he had stumbled into the river before being brought over to the boat, there

was nothing in his conduct after reaching the boat that would indicate to the employes of appellee on the boat that there was danger that he would fall overboard.

There is no merit in the claim that the servants or agents of appellee took deceased from his home over to the boat. On the contrary, the proof shows that the employment was offered him, and he voluntarily went to accept same, and this with the full knowledge, consent, and acquiescence of his wife. Nor was appellee in the least responsible for his being under the influence of liquor. Upon this point the record shows that he was partially so when he left home; that he voluntarily contributed to intensify this condition before reaching the river, and again after arriving at the boat. Certainly appellee is in nowise responsible for these acts on the part of deceased and this brings us, then, to the question as to whether or not appellee owed deceased a duty to guard and protect him while on its boat, knowing that he was more or less under the influence of liquor. If it did, then the peremptory instruction should not have been given, and this is the sole question in the case.

This court has on several occasions been called upon to pass upon the degree of care which common carriers are required to exercise in dealing with trespassers found upon their cars or about their premises in a drunken condition. In the case of C., N. O. & T. P. R. R. Co. v. Marrs, 119 Ky. 954, 85 S. W. 188, 27 R. 388, 70 L. R.A.291, 115 Am. St. Rep. 289, deceased was run over and killed by a switch engine of appellant in its yards, and it developed in the proof that those in charge of the switchyard had seen him helped from a train while in a drunken condition, and later found him lying in a stupor between the tracks in the yard

in the nighttime.  In upholding the ruling of the lower court in refusing to give a peremptory instruction, this court held that, having found deceased in this condition, the employes of the company could not arouse him, and start him wandering in the dark through the network of switches and tracks, and then afterwards run over him, and say they owed him no lookout duty because he was a trespasser; but it was their duty when they aroused him to either see him safely out of the yard, or in default of this, to exercise ordinary care to avoid injuring him in moving or switching engines around the yard.  It will be observed that in this case the company could have relieved itself from all liability by exercising ordinary care to avoid injuring deceased while in its yard, although in an intoxicated condition.  In the case of Fagg's Administrator v. L. & N. R. R. Co. 111 Ky. 30, 63 S. W. 580, 23 R. 383, 54 L. R. A. 919, a trespasser was ejected from a freight train in a drunken and helpless condition in a cut on a dark night, and he was later run over and killed by a train which followed, and it was held that the company was liable because, notice of the drunken and helpless condition of the deceased having been brought home to the company, it was its duty to have exercised ordinary care to save his life, and that its failure so to do rendered it liable.  Here again, the negligence upon which a recovery was justified was the failure of the company to exercise ordinary care to avoid injuring deceased after notice of his helpless and drunken condition was brought home to it.  In the case of L. & N. R. R. Co. v. Ellis, 97 Ky. 330, 30 S. W. 979, 17 R. 259, deceased was put off a train in a drunken and helpless condition because he refused to pay his fare, and was later run over and killed by another train.  This court

held that the company was liable in damages for his death because deceased was put off the train in a cut, away from a station, with banks and fences on either side of the track, and at a time when he was in such a helpless condition, mentally and physically, that he was incapable of taking care of himself, and because the deceased at the time he was ejected had neither the physical ability to avoid danger nor mental capacity to discern it. In this case all the authorities in this state bearing upon this question are reviewed, as are also authorities in many other states; and the court there concluded from a consideration of all such that if the deceased was ejected from the train when he was in such a physical or mental condition from intoxication or other cause as to render him incapable of caring for himself, and the officers or agents in charge of the train knew of his then helpless condition, and, knowing this, put him off in a place where he would necessarily or probably be exposed to death or great bodily harm from passing trains, and he was thereafter run over and killed, the company would be liable. In all these cases where a liability has been upheld, it has been upon the ground that the negligent acts complained of were the proximate cause of the resulting injury, and in each particular case it will be observed the party injured was so intoxicated as to be mentally incapable of appreciating the danger in which he was placed and physically unable to avoid it.

Measured by this rule or standard, did appellant make out a case? The only evidence which would at all tend to establish the fact that deceased was drunk to a considerable extent is that, while at the river bank waiting for the skiff to take them across, he staggered or stumbled into the water, although he

did not fall. Considered by itself, this would tend to show that he was drunk to such an extent as that he did not have entire control over his movements, and yet in going from his home to the river, a distance of some eight or ten squares, there is no evidence from his movements or deportment that he was not capable of taking care of himself; and after the river had been crossed, and he had gone upon the boat, there is no evidence tending to show that he could not intelligently direct his movements, and, in fact, it is urged with a great deal of earnestness that his fall into the river, which is supposed to have resulted in his death, was due to heart failure or a stroke of apoplexy rather than to his inability to walk along the passageway which he was traveling when he fell into the water, nor is there any evidence which would justify the conclusion that he was drunk to such an extent that his mentality was impaired. Hence we conclude that the facts brought out in evidence do not bring this case within the rule announced in the various decisions of this and other courts, relied upon by appellant, and, while the record shows conclusively that deceased was drinking, it fails to show that he was drunk enough to bring his case even within the rule announced in the case of L. & N. R. R. Co. v. Ellis, in which the principle here contended for was carried to its extreme limit. Appellee had been guilty of no act of negligence or breach of duty in offering deceased employment. It had not exposed him to danger, but he had voluntarily gone to the boat to accept employment. The boat was not moving, but was moored to the bank, and was in as safe a condition as a boat of that character could reasonably be made. Appellee did nothing to cause deceased to fall into the river, and is no more responsible for

his doing so than it would have been for an injury he might have received had he fallen from his door-step when starting from his home with the agent of appellee, or had he fallen in the street and hurt himself, or when he staggered into the water at the river's edge, if he had fallen and been drowned before he could have been rescued. It will hardly be contended that, had the accident happened to him in any of these ways, appellee would have been responsible therefor; and yet there would be as much reason for so holding in these cases as in the case at bar. A different case would be presented if, after deceased had voluntarily gone to the boat, he had been taken charge of by the officers or other agents of appellee and exposed to the danger, and by means thereof met his death. It might then, with some degree of plausibility, be said that appellee must answer for its act. If A. should send word to B. to go to his home to do a certain piece of work for him, and B. should answer the call while in an intoxicated condition, and A., upon discovering that he was intoxicated after he had reached his house, should tell him that he had decided not to have the work done, and B., when in the act of leaving, should fall out of the door and down the steps to his injury, would A. be responsible therefor? Clearly not; and the case at bar is no stronger. A man cannot voluntarily drink to intoxication, and while in this condition negligently bring an injury upon himself, and hold another responsible therefor on the ground that the latter should have guarded or restrained him so as to have prevented the injury, unless such person owed him some duty. In such a case the injury is the result of his own wrong, and he alone must suffer. In the case at bar it does not appear that appellee owed any duty

to deceased, and the trial court, having so found, did not err in taking the case from the jury.

Judgment affirmed.