CASE 38—PETITION ORDINARY—FEBRUARY 12.

# Lou. & Nash. R. R. Co. v. Logan.

APPEAL FROM MARION CIRCUIT COURT.

RAILROADS—RIGHT TO EJECT DISORDERLY PASSENGER.—Where the conduct of a passenger on a railroad train is such as to alarm or insult the other passengers, interfere with the management of the train, or endanger the safety of the passengers, or those in charge of the train, it is not only the right but the duty of the conductor to eject him, and the company is not liable for any injury that may result, provided no more force is used than is reasonably necessary; and this rule applies to an intoxicated person, although he may not be able to take care of himself, and although he was known to be intoxicated when received as a passenger.

The conduct of a drunken passenger on a train being so offensive and dangerous, both to the conductor and other passengers, as to require his expulsion, the company was not required to take him to the next station before putting him off, even though he was so intoxicated as not to be able to take care of himself, which does not appear. All that was required of the company was to use no more force than was reasonably necessary for the purpose, and to place him off the track out of the way of that train; and the company, having exercised the proper care in putting him off, is not liable by reason of the fact that he went upon the track and was run over by another train.

WM. LINDSAY AND W. J. LISLE FOR APPELLANT.

Brief not in record.

HARRISON & BELDEN FOR APPELLEE.

In ejecting a passenger for disorderly conduct, a railroad company must use reasonable precaution for the passenger's safety, and if the passenger is in such a drunken condition as to be unable to take care of himself, the company will be liable for injury resulting from putting him off at a place where his condition necessarily exposes him to the danger of being injured by other trains of the company. (L. C. & L. R. R. Co. v. Sullivan, 81 Ky., 624.)

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellee, widow of E. V. Logan, brought this action to recover damages for destruction of his life by the

alleged willful neglect of the servants of appellant, the material facts of the case being as follows :

The deceased, about half past ten o'clock at night, June 19, 1883, at Lebanon, got on a passenger train bound from Louisville to Knoxville, Tenn., to go to a station where he resided, fourteen miles distant. He was at the time intoxicated; stumbled or slipped and fell on the depot platform; was helped upon the car platform, and, in the opinion of two witnesses, too drunk to take care of himself, though he was also boisterous, profane and disposed to be quarrelsome.

Upon being requested by the conductor, soon after the train started, to pay his fare, he asserted he had paid it, which was untrue, and in reply to the statement of the conductor he had not, he said with an oath, he would not, that there were not men enough on the train to put him off, at the same time pulling out his knife, and did not pay until the conductor and brakeman had proceeded with him to the car platform for the purpose of putting him off. After receiving his fare, the conductor left him in the smoking car, where his seat was, and proceeded to the ladies car to collect fare from those who had boarded the train at Lebanon, and while so engaged, the deceased, leaving the smoking car, went behind him, having, as some of the witnesses testify, a knife opened in his pocket, and assuming a menacing attitude, applied to him, in a loud tone of voice, such profane, opprobrious and threatening language, as to cause general excitement among the passengers ; one lady being so much frightened that she implored the conductor to remove him from the car. The deceased then returned to the

smoking car, and upon being, soon after, approached and admonished by the conductor to keep his seat and be quiet, he drew his knife and threatened to kill him ; and after the conductor returned to the ladies' car, the deceased again tried to enter it, but being unable to do so because the door had been locked to keep him out, he, on his way back to the smoking car, pulled the bell-rope the number of times required to stop the train, and it was, in obedience to his signal, stopped by the engineer. The conductor then went into the smoking car, and telling the deceased, who, though he had just taken his seat, pretended to be asleep, that he would not permit any one to pull the bell-rope, and paying back his fare, with the aid of the brakeman put him off the train and left him. The place where it was done is about four miles from Lebanon, two from the nearest station south, about one hundred and fifty yards from a private crossing of the railroad north, and two hundred from the nearest farm house. Early the next morning the mutilated body of the deceased was found about twenty-five yards north of the private crossing mentioned, and his hat, a sack and bucket, which he had the night before, were near the place he was put off the train, his hat being nearest the body. Three trains passed the place where his body was after he was expelled from the passenger train, two going north, one of which passed within about one hour and a half, the other later in night, and the third going south about daylight. It is plain he was not killed by being struck or run over by the passenger train from which he was ejected ; for not only was his body found near two hundred yards north

Louisville & Nashville R. R. Co. v. Logan.

of where he was left by it, but a little more than twenty-five yards north of the place on the track where there was the first appearance of blood, showing conclusively the train by which he was killed was going north.

Assuming, as the evidence seems to warrant, that he was killed by one of the north bound trains, though by which one of the two does not appear, the first inquiry is whether any legal liability has been fixed upon appellant on account of negligence of those in charge of it; and as there is no evidence showing at what time in the night, or why he went upon the track in front of a passing train, if he did do so voluntarily, nor whether he was in such position at the time of being struck as to make it the duty of those in charge to stop the train, or as to enable them, by the exercise of proper diligence, to discover him in time to prevent a collision, or at all; and, consequently, none whatever of any negligence or fault on their part, that question must be answered in the negative.

It thus results that whatever cause of action there may be in favor of appellee, arises entirely from the conduct of the conductor of the passenger train, and the liability of appellant therefor, if liable at all, is not dependent upon nor increased by the fact that the train by which he was subsequently killed was owned and operated by the same company. For if the act of the conductor was not itself wrongful, it could not be made so by referring it to, or connecting it with, the independent act of other employes, to whom no wrong can be attributed.

Counsel argue in effect that when an intoxicated person offers to go upon a railroad train as passenger, the alternative is presented to the company either to refuse permission, or else, having received him and accepted his fare, to answer in damages for whatever calamity to him may follow his subsequent expulsion, though justified by his improper conduct. Although it has been held that a railroad company is not bound to receive and carry a person who is so intoxicated as to be offensive, the power to exclude one from the right of traveling on a train, who offers to pay his fare, and though intoxicated, has not been guilty of any conduct as passenger forfeiting the right, is always subject to be called in question, and the company can not, therefore, be fairly held to a strict exercise of it, except where the rights of others are involved. But even conceding the conductor could have forcibly and without incurring any legal liability to him, kept the deceased off the train at Lebanon, and committed an error in failing to do it, we do not see how, on that account, the right was impaired, or the duty lessened to put him off at any place or time afterwards, when his behavior rendered it legal and necessary. And if the deceased, for whose drunken state the company was in no way responsible, acted so as to justify and require his expulsion, it would be a harsh rule to make the company liable, if not otherwise so, merely because the conductor did not assume the risk and responsibility of deciding, even if aware of the fact, that he was too much intoxicated to be allowed to go upon the train at Lebanon. Then regarding the deceased upon the train by his own volition, which the

conductor did not nor was bound to oppose, the main question is whether the willful neglect of appellant or its servants in charge of it, to perform any duty it owed to him, was the proximate cause of his death.

The law makes it the duty of a railroad company to use all reasonable care in operating trains for both the safety, and protection from molestation and insult, of passengers; otherwise, orderly and infirm persons and females, who, upon the faith of such protection, frequently travel unattended, would have no security against turbulent, bad men; and as it is obvious a train must be run with skill and system in order to assure safety and comfort, the conduct of any one who interferes with the management, or, without just cause, attempts to do bodily injury to, or put in fear, those in charge, is reprehensible and unlawful. But a railroad company is not required to keep at hand armed police to arrest and confine on a moving train those who violate its necessary rules, or do injury to other passengers, nor can the employes neglect their duties, upon the faithful performance of which the safety of all depends, in order to do so. Consequently, the only effectual remedy for, or security against, disorderly and lawless behavior on board a passenger train, is the immediate and summary expulsion of the wrong-doer, and plenary authority of the conductor to do it is universally recognized, and required to be exercised whenever necessary for the safety or protection of either passengers or employes.

It is clear, from the evidence in this case, the conduct of the deceased was such as to justify his expulsion. For he not only, with a hostile purpose, left his proper

place and pursued the conductor into the ladies' car, where he disturbed, alarmed and offended the passengers, but, baffled in an effort to enter it a second time with the same intent, he wantonly and slyly pulled the bell-rope, whereby the train was stopped between stations. Moreover, his behavior to the conductor was without provocation, and such as to afford to him reasonable grounds to believe he was in danger of bodily harm, if not of losing his life. In fact the gravamen of the action, as stated in the petition, is not based upon the lack of legal cause for the expulsion, but rather upon the circumstances of time, place and manner it was done, in view of the alleged physical and mental condition of the deceased. Though the time was at night, it was not too dark to see the railroad track distinctly, nor was the weather either cold or inclement; while it would, in fairness, seem no more than retributive justice that he was put off at the place his own malicious and unlawful act caused the train to stop, especially as the locality was not unsafe.

The question then arises whether, notwithstanding his continued presence on the train was so offensive and dangerous both to the conductor and other passengers as to justify and require his expulsion, the paramount duty was imposed upon the company by reason of the mental and physical condition of the deceased, to carry him to the next station, the non-performance of which is, in legal contemplation, willful neglect.

It was not enough for the jury in this case to find he was too intoxicated to take care of himself, but to constitute willful neglect, even if the company was

under obligation to look after his safety after he had forfeited his right as passenger, it was necessary that the conductor knew, or had reasonable grounds to believe, not in the language of one of the instructions of the lower court, that to put him off the train "would necessarily expose him to the danger of death from being run over by passing trains," but that such would be the natural and probable result of putting him off.

If his actions while on the train, by which alone the conductor could or was required to judge, be taken as evidence of what his actual condition was, he not only had the power of locomotion, as shown by his passing, with entire safety, to and fro between the cars while the train was in motion, but knew well how to do mischief to others, and was at the same time extremely sensitive of injury to himself. And it seems to us, in the light of the undisputed facts of the case, unreasonable to charge the company with negligence of any degree in expelling him from the train at the time and place it was done. But as it is proper, we will consider the relation and mutual obligations existing between him and the company, as though it was an open question of fact whether the conductor knew, or had reasonable grounds to believe, he was too intoxicated to take care of himself.

It is well settled by this court, and the certain and just execution of the law and welfare of society require it to be settled, that voluntary drunkenness affords no excuse for the commission of crime; nor is it a valid defense to an action for a civil injury. For in every situation and relation, an intoxicated person,

like others, should be held to the strict observance of
the just and salutary rule which requires each one. to
so use and enjoy his own as not to injure others.   It
thus becomes lawful for a landlord to expel from his
tavern to the street or highway, at any time, a person
who, whether intoxicated or not, endangers the safety
or molests and insults his guests ; and no one would
question the right of a housekeeper to eject from his
domicil, a drunken man who maltreats or offends, by
indecent conduct or language, his wife and children,
provided no more force be used for the purpose, in
either case, than reasonably necessary.   Such being a
rule of conduct recognized as just and necessary, we
do not see why it ought not to be applied, upon the
same conditions, for the benefit and protection of pas-
sengers on a railroad train, nor why they should be
given the right to maintain an action against a railroad
company for suffering them to be molested, put in
fear and insulted on a train by drunken men, while
denying the company the right, except at its peril, to
resort to the only feasible means in its power to pre-
vent or stop the wrong being done.   Common justice
would seem to require either that passengers be left
without redress against the company for wrong and
injury done to them on trains by disorderly and vicious
persons, or else that no liability attach or negligence
be imputed to the company when the expulsion of the
latter is rendered necessary for the safety and protec-
tion of the former.   Thus the issue in every such case
as this is really between the orderly, infirm and females
on the one side, and the turbulent and evil-disposed on
the other, and the company has the right to terminate

Louisville & Nashville R. R. Co. v. Logan.

the relation of carrier and passenger between it and the latter class whenever and wherever they lawlessly put in fear, disturb or insult the former; and, in our opinion, if the deceased went into the ladies' car, and there, by his violence and indecent behavior or language, excited, alarmed or insulted the other passengers, or if he interfered with the management of the train by pulling the bell-rope or otherwise, or if he threatened, with an opened knife, to take the life or do bodily harm to the conductor, or attempted to deter or intimidate him while in the performance of his duties, the right existed to put him off the train at the place it was done, and all required of the company was to use no more force than reasonably necessary for the purpose, and to place him off the track, out of the way of that train; for although there might be a case where a railroad company would be guilty of willful neglect, in the meaning of the statute, by ejecting, without imperative necessity, a passenger so drunk as to be helpless, when his death would naturally and probably result from agencies other than his own act then present and impending, the law does not exact care and precaution against the death of one from remote causes or self-inflicted, whose conduct has afforded legal grounds for his expulsion.

The case of Sullivan v. Louisville, C. & L. R. Co., 81 Ky., 624, is unlike this. There the only cause for expulsion was the failure, by reason of inability, to pay the fare, which was twenty cents. Here the deceased was able to pay, but threatened violence because he was urged to pay, and compelled the conductor to resort to force to get it. There the delinquent was not turbulent

nor offensive to either passengers or employes. Here the deceased not only insulted and alarmed the passengers, but menaced the conductor, and imperiled the safety of all on board by causing the train to stop. In that case Sullivan was inhumanly put off in a deep snow, the weather being intensely cold, and on account of his helpless condition, which the conductor knew of, was unable to escape the injury that was at the time manifestly inevitable. In this case the deceased was killed by his own act in going upon the track at least one hour and a half after he was put off the train, which the conductor had no reason to believe, from his actual condition, as it appeared to him, was probable.

As the lower court refused to give any instruction according with the views here expressed, but instead gave those which are either abstract or erroneous and misleading, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.