CASE 3—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S INTESTATE—MAY 28.

# Fagg's Admr. v. Louisville & N. R. R. Co.

APPEAL FROM SIMPSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

CARRIERS—DUTY TO DRUNKEN TRESPASSERS ON FREIGHT TRAIN— EJECTION AT PLACE WHERE HE ENTERED TRAIN—NOTICE TO SUPERINTENDENT OF PERIL TO HELPLESS TRESPASSERS ON TRACK.

Held: 1. In an action by an administrator to recover damages for causing the death of his intestate, it is proper to allege in one paragraph of the petition all the different acts of negligence on the part of defendant which caused the death.

2. Where the servants in charge of a freight train ejected a trespasser in a drunken and helpless condition in a deep cut on a dark night, and he was run over and killed by a train which followed, as the servants ejecting him had reason to believe that he would be, the railroad company was liable for his death, though the place at which he was ejected was the place at which he entered the train.

3. Notice to the superintendent of the road and to the nearest station agent of the peril of the trespasser after he was ejected was notice to the company, and for their failure to exercise ordinary care to save his life, by notifying the servants in charge of a train which was soon to pass through the cut, the company is liable, if the servants in charge of the approaching

Fagg's Admr. v. Louisville & N. R. R. Co.

train could, without hazarding the lives of passengers or the property of the company, have avoided running over him.

JUDGES DuRELLE AND BURNAM, DISSENTING.

ROARK & FINN, FOR APPELLANT.

(No brief in record.)

EDWARD W. HINES AND J. A. MITCHELL, FOR APPELLEE.

This, action was brought by the administrator of Solon Fagg to recover damages for the death of his intestate, and his petition having been dismissed on demurrer he prosecutes this appeal.

He alleges in the first paragraph that his intestate, in a drunken and helpless condition, boarded one of defendant's trains in a cut within the limits of the city of Franklin, and that defendant's servants in charge of said train then and there wrongfully and negligently ejected him, though the night was dark and rainy, and they knew his condition, and that other trains of defendant would shortly pass through said cut, and that under said circumstances it was natural and probable that death or great bodily harm would be inflicted upon him by reason of his being ejected, and that thereafter. on the same night said Fagg, while upon defendant's track in said cut, where he had remained drunk and in a helpless condition, was run over and killed by one of defendant's trains.

By the second paragraph he alleges that defendant's superintendent at Nashville, Tenn., and its agents at Franklin, Ky., had notice that said Fagg was in said cut upon defendant's track in a drunken and helpless condition, and that though they had ample time to give notice of the peril of said Fagg to the servants in charge of the north-bound passenger train, which run over and killed him, they failed to do so.

That neither paragraph of the petition states a cause of action seems clear.

It is admitted that he was a trespasser and that defendant owed him no duty except to refrain from wantonly, or wilfully injuring him is well settled. He was ejected "then and there" at the very place where he got on, and although it was in a cut, it was also within an incorporated town, and it was reasonable to suppose that he resided near by or that some one would find him and take care of him, and the fact that he was able to board a train in a cut indicated that he was not in such a helpless condition as to require any duty at the hands of the train men to fear or believe that he was in danger of being killed by some other train. Reed v. L. & N. R. R. Co., 20 Ky. Law Rep., 815.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—REVERSING.

The plaintiff, J. P. Waldron, administrator of Solon Fagg, deceased, instituted this suit against the appellee to recover damages for the alleged negligent killing of the intestate. The question here for review is the action of the court in sustaining a demurrer to the petition as amended, and in dismissing it upon appellant's failure to plead further. It is in two paragraphs, but, in our opinion, it was not necessary or proper to thus paragraph it. If it is good, it simply states one cause of action; that is, the appellee's negligent killing of the appellant's intestate, which resulted in damage to the estate of the intestate. Because there may have been one or more acts of negligence which produced the injury resulting in death does not make it proper, in stating the cause of action, to do so in as many paragraphs as there may have been acts of negligence which separately or collectively produced the injury. So, in stating the averments of the petition, we will do so as though it was not paragraphed. It is averred that there is a deep cut upon the defendant's roadbed in the city of Franklin, immediately north of defendant's north switch; that upon a night in December, 1898, the decedent, Solon Fagg, was in a drunken and helpless condition, and at about eight o'clock upon that night, while in that condition, boarded the north-bound freight train in the cut; that the night was dark and rainy; that the agents and servants of defendant in charge of the freight train knew the drunken and helpless condition of the decedent; that they knew that other trains of the defendant would shortly pass through the cut, yet they then and there negligently and wrongfully ejected him from the train; that it was natural and probable that death or great bodily harm would be

inflicted upon him by reason of being ejected from the
train; that upon the same night, while upon the track in
the cut, drunk and in a helpless condition, he was run
over and killed by one of the defendant's trains; that upon
the night in question the defendant's superintendent at
Nashville, Tenn., and its agent at Franklin, Ky., had no-
tice that he was in the cut upon defendant's track in a
drunken and helpless condition; that the superintendent
and agent knew that in a short while a north-bound pas-
senger train would pass through the cut where he was,
and that he was in great danger; that the superintend-
ent and agent had ample time and opportunity to notify
defendant's crew in charge of the north-bound passenger
train which would shortly pass through the cut that he
was in the cut, and to take other precautions to prevent
his injury; that they failed to notify the crew upon that
north-bound passenger train concerning him, and failed
and refused to use any care or take any precaution to pre-
vent injury to him; that the north-bound passenger train
ran over and killed him in the cut upon the night in ques-
tion.    In an amended petition it is averred that the dece-
dent was killed at the point where he was ejected from the
train; that if the superintendent at Nashville and the
agent at Franklin had notified the crew upon the passen-
ger train of the position which he occupied, and of his con-
dition, those in charge of it could and would have avoided
injuring him, without endangering the passengers or the
train.    The foregoing averments are substantially those
contained in the petition as amended; at any rate, all
those that are essential to be stated for the purpose of
considering the sufficiency of the petition.    They are taken
as true on demurrer.

Vol. 111—3

For the purpose of considering the question involved, the facts averred may be summarized as follows: Decedent, without a right to do so, placed himself upon a freight train, and thus became a trespasser. He did this while the train was standing in a deep cut, on a dark and rainy night in December. While he was in a drunken and helpless condition, he was ejected from the train in the cut, and left there in the condition described. This condition was known to those in charge of the train from which he was ejected. They also knew that shortly thereafter a passenger train would pass over the track through the cut. The superintendent of the road at Nashville, and the agent at Franklin, the station near by where the ejectment took place, were notified that he was on the track in the cut in a drunken and helpless condition, and this notice they received in time to have saved him from the impending peril by the exercise of ordinary care, and in doing which it would not have hazarded the lives of the passengers or the property of the appellee. The question is not involved as to the right of those in charge of the freight train to have ejected the decedent. That he was a trespasser, and the right to eject him, is admitted. The law gave the right to the agents and servants of the appellee to eject him. The question here for determination is whether they should have ejected him at the time, place, and under the circumstances averred in the petition, considering his mental and physical condition. The liability of appellee, if it exists, arises from the disregard of those in charge of the freight train for human life while in the performance of a legal right, and the disregard for human life by the appellee's superintendent and agent after they were advised of the perilous position which the decedent occupied, and their failure to use care

to save him.    All courts and all law writers agree that
those in charge of a train have no right to throw a tres-
passer from it while moving, and thus jeopardize his life.
Principles of humanity forbid the exercise of the right in
such a cruel manner.    For the same reason, if they eject
a trespasser who is not imperiling the lives of the officers
in charge of the train, or the passengers, or doing some-
thing which makes it hazardous to permit him to remain
upon the train (Railroad Co. v. Logan, 88 Ky., 232 (10 R. 798)
[10 S. W., 655; 3 L. R. A., 80]), they must be regardful of the
time, place, and circumstances under which they perform
the act of removal.    If the decedent had boarded the train
several miles from the cut, and after reaching there had
been removed, under the circumstances described, it seems
to us that no one could have had any difficulty in reaching
the conclusion that death or great bodily harm would
have been the natural and probable result of the removal,
and a liability would have been incurred by the appellee.
In this case, according to the averments of the petition, he
got on the train, and, after getting on, was a trespasser,
just the same as if he had boarded it at another station,
and been carried to that point.    Getting on the train was an
accomplished fact.    The fact that he had just got on the
train while it was standing in the cut did not give those in
charge of it the right to seize and hurl him from it, with-
out regard to consequences; neither did that fact give them
the right to eject him, regardless of time, place, and circum-
stances, and his physical and mental condition.    They had
no more right to jeopardize his life in his removal because
he had been on the train but a short time than they would
have had if he had been carried to that point from elsewhere.
The right to remove a trespasser does not depend upon the
question as to the length of time he has been on the train,

neither is the liability of the railroad company affected by the fact that the trespasser has been on the train a long or a short time. That fact has nothing to do with the case. The same responsibility attaches for the removing of him in the one case as in the other.

The principle which underlies the doctrine enunciated in Railroad Co. v. Sullivan, 81 Ky., 624 (5 R. 722) (50 Am. Rep., 186), and Railroad Co. v. Ellis' Adm'r, 97 Ky., 330 (17 R. 259) (30 S. W., 979), is applicable to the facts of this case. Sullivan was drunk, and failed to pay his fare on demand, and was removed while in a drunken condition, in a deep snow, and fell and laid in it until he was badly frozen, entailing the loss of some toes, fingers, and part of his heel. The court held that the railroad company was liable for the injury resulting to him under the circumstances detailed. In the Ellis case, the removal took place when he was drunk and in a cut in the road, on either side of which was a wire fence, and the court held that if the natural and probable result of his removal, under such circumstances was that he would be killed by trains that would subsequently follow, then the company was liable. In condemning an instruction in that case which assumed the agents of the railroad company had the right to eject a trespasser, regardless of the time, place, and circumstances and his physical and mental condition, the court said: "It seems to us that the ordinary principles which characterize humanity condemn such claim. If the claim of appellant be true, that the decedent was ejected in a cut, away from any station, with banks and fences on either side of the track, in such mental or physical condition as rendered him incapable of taking care of himself, the officer with a knowledge of his condition, then it was no less wrong to eject decedent under the circumstances than it would have been

to have ejected from the train a toddling child who had not mental capacity to know the danger of walking upon a railroad track, or the physical ability to avoid such danger if it had the mental capacity to discern it. Would any one contend, if appellant should kill a child under such circumstances, that it would not be liable to damages therefor?" To show the views that other courts have on questions substantially similar to the one here involved, we will quote from opinions delivered by them. It was said in Haug v. Railway Co. (N. D.) 42 L. R. A., 669, (s. c. 77 N. W. 97): "When the carrier discovers that one helpless from intoxication is upon its train without right, it must, in selecting a safe place to put him off, have regard to his actual condition, physical and mental, without any reference to his responsibility for such condition. The law declares to the carrier that it shall not expose him to great peril, even in exercising its undoubted right to eject him; and, in declaring whether he will be subjected to peril, not only must climatic conditions, the propinquity of shelter, and other matters be taken into account, but also the actual state of his mind and bodily health and strength, if known to the agent of the carrier." In Railway Co. v. Valleley, 32 Ohio St., 349 (30 Am. Rep., 601), the court said: "It might, perhaps, as far as this case is concerned, be conceded that, if a man were so intoxicated as to be without reason, sense, or intelligence, it would be unlawful, as it would be inhuman, to expel him from cars at night, where he would be just as likely as not lie down upon the rails and go to sleep. We may concede, further, that to put off a drunken man, during a bitterly cold night, in the woods, far from any house, when the probabilities were he would freeze to death before help could reach him, would be as indefensible in law as it would be wicked and

cruel in fact. And, further, to put a man off, in a dark night, upon a high railroad bridge, or upon the brink of a precipice, where the first step would be destruction, this could find no justification in law. All this might possibly be." In Railroad Co. v. Weber, 33 Kan., 554 (6 Pac., 877), the court said: "The duty of the railroad company, however, with respect to Weber, did not end with his removal from the train. He was unconscious, and unable to take care of himself. The company could not leave him upon the platform helpless, exposed, and without care or attention. It was its duty to exercise reasonable care and diligence to make temporary provision for his protection and comfort. As was said by the learned court who tried the cause: 'Of course, the carrier is not required to keep hospitals or nurses, for sick or insane passengers, but, when a passenger is found by the carrier to be in such a helpless condition, it is the duty of the carrier to exercise the reasonable and necessary offices of humanity towards him until some suitable provision may be made.' " In Conolly v. Railroad Co., 41 La. Ann., 61 (5 South., 259), (6 South., 526), (3 L. R. A., 133), the court said: "But none of these cases hold that this right of exclusion can be exercised arbitrarily and inhumanly, or without due care and provision for the safety and well-being of the ejected passenger. On the contrary, the duty of exercising such care and provision is universally recognized." In Railroad Co. v. Pitzer, 109 Ind., 186 (6 N. E., 310), (10 N. E., 70), the court, referring to some cases, said: "These are cases —extreme ones, it may be—illustrating the doctrine that regard must be had to the helpless condition of one who enters a railroad train, and that those in charge of the train must do no act which is cruel or inhuman. Granting that these cases are extreme ones, still the general doctrine

which they assert is undeniably a sound one; for through
all the cases runs the principle that what humanity re-
quires must be done by those who act with knowledge of
another's helplessness." In Roseman v. Railroad Co., 112
N. C., 716 (16 S. E., 766), (19 L. R. A., 327), the court said:
"But where the power expressly given by law is exercised
in such a manner as to willfully and wantonly expose the
ejected person to danger of life or limb, the company is
still liable for injury or death resulting from the expul-
sion. Cases falling within this last exception to the gen-
eral rule, and not intended to be included under the stat-
ute, arise, where the persons ejected are manifestly too in-
firm to travel or too much intoxicated to be trusted to find
the way to the nearest house or station. 3 Wood, R. R.,
section 362; 2 Shear. & R. Neg., section 493; Railway Co.,
v. Wright, 34 Am. Rep., 277." In Brown v. Railroad Co.,
51 Iowa, 238 (1 N. W., 487), the court said: "In exercising
the right of ejection, reasonable and ordinary care should
be employed. In determining whether such care has been
exercised, all the circumstances should be considered,—as
the physical condition of the person ejected; the time,
whether in daylight or late at night; the condition of the
country, whether thickly or sparsely settled; the place
of the ejection, whether near to, or remote from, dwellings
of any character, including stations; the character of the
weather, whether pleasant or inclement, etc. The rules of
law, as well as the dictates of humanity, require that the
ejection shall occur at such place, and be conducted in
such manner, as not unreasonably to expose the party to
danger." Judge Elliott, in his work on Railroads (section
1637), says: "If he is so intoxicated or so young or feeble
as not to be able to take care of himself, or look out for
his own safety, the company should exercise reasonable

care to see to it that he is not expelled and abandoned in
such a place, and under such circumstances, that he will
be exposed to unnecessary peril." The conclusion which
we have reached is supported by Isbell v. Railroad Co., 27
Conn., 393 (71 Am. Dec., 78).

Should the company be held responsible because its su-
perintendent at Nashville and agent at Franklin knew
that the decedent was on the track in a drunken and help-
less condition, and that shortly thereafter a train would
pass over its track through the cut, and failed to notify
those in charge of it of his situation, and thus avoid the
calamity which befell him? We think it should. The
knowledge of these officers was the knowledge of the
company. From the averments, they could have avoided
the injury by the exercise of ordinary care. They could
have saved the life of the unfortunate man by giving no-
tice to those in charge of the passenger train of his peril.
It would be a strange doctrine of ethics and of law if an
unfortunate man, on a dark, cold night, in a drunken and
helpless condition, is on the track of a railway company in
a deep cut, and that fact is known to the superintendent,
together with the knowledge that a passenger train will
soon pass over the track through the tunnel, and will prob-
ably kill him, that the company is not responsible if its
superintendent could have avoided the injury by the exer-
cise of ordinary care, and failed to do so. We are of the
opinion that if the death of deceased would naturally and
probably flow from the act of his removal from the train
at the time, place, and under the circumstances in his physi-
cal and mental condition, then the company is liable. We
are also of the opinion that, if the company could not be
made responsible for the acts of its agents and servants
in thus removing the decedent, still if he was on the track

in a drunken and helpless condition, and the superintendent at Nashville and the agent at Franklin knew of his situation, and failed to exercise ordinary care to save his life, by notifying those who were in charge of the train which was soon to pass over its track through the cut, and those in charge of the train could have, without hazarding the lives of the passengers on it or the property of the company, avoided running over him, the company is liable. The judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.

Judges DuRelle and Burnam dissent.