CASE 124—ACTION BY WILLIAM MARR'S ADMX. AGAINST THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RY. CO., FOR DAMAGES FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—FEB. 28.

## Cin., N. O. & T. P. Ry. Co, v. Marrs' Admx.

APPEAL FROM FAYETTE CIRCUIT COURT—WATTS PARKER, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF. DEFENDANT APPEALS. AFFIRMED.

RAILROADS—DUTY TO DRUNKEN TRESPASSER.

Where the yardmaster and the foreman of the switch crew of a railroad company saw a passenger of another railroad company aroused from his drunken stupor and put out of the car on the the depot platform, and a few minutes later found him drunk and sleeping between the tracks, in their switchyard, it was their duty either to see him safely out of the yard, or to watch out for him as the engine was moved about; and, having done neither, but merely aroused him and started him walking in the direction of the road, and shortly after run over him on a track, where he had again gone to sleep, their employer railroad company is liable for his death.

THORNTON & KERR, ATTORNEYS FOR APPELLANT.
JOHN GALVIN, OF COUNSEL.

### POINTS AND AUTHORITIES.

1. The verdict was not sustained by sufficient evidence.
2. The trial court should have given an instruction on the sub-

Cincinnati, N. O. & T. P. Ry. Co. v. Marrs' Admx.

---

ject of contributory negligence. Johnson v. L. & N. R. R. Co., 104 Ala., 241; Milliman v. New York Central, etc., R. R. Co., 66 N. Y., 642; Stroud v. Chicago, &c., R'y Co., 67 Mich., 380; Virginia Midland R. R. Co. v. Boswell, 82 Va., 932-935; Houston, etc., R'y Co. v. Sympkins, 54 Texas, 615; Newton v. Central Vt. R. R. Co., Hun, 491; Rhyner v. Menasha, 107 Wis., 201; Cummins v. Henry, 10 Ind., 109.

3. The court should have given a peremptory instruction— where the question is one of negligence or no negligence, and the evidence is equally consistent with either view, the court should not submit the case to the jury. Wintuska v. L. & N. R. R. Co., 14 Ky. Law Rep., 579; Louisville Gas Co. v. Kaufman, &c., 105 Ky., 131; L. & N. R. R. Co. v. Wathen, 22 Ky. Law Rep., 85; Hughes v. C. N. O. & T. P. Ry. Co., 91 Ky., 532.

4. The court erred in the admission of testimony against the objections of appellant. Brown's Admr. v. L. & N. R. R. Co., 97 Ky., 228.

5. The cases of Virginia Midland Railway Company, 82 Virginia State Reports, 932 (7 S. E. Reporter, 385); Brown's Admr. v. L. & N. R. R. Co., 103 Ky., 211, and Fagg's Admr. v. L. & N. R. R. Company, 111 Ky., 30, commented upon.

## LIST OF AUTHORITIES BY APPELLANT.

1. It was incumbent on appellee to prove negligence on the part of appellant's servants. Early's Admr. v. L., H., & St. L. Ry. Co., 24 Ky. Law Rep., 1807, and authorities therein cited.

2. Duties of railroads to trespassers in their yards, tracks, &c. L. & N. R. R. Co. v. Howard's Admr., 82 Ky., 212; K. C. R. R. Co. v. Gastineau's Admr., 83 Ky., 119; Shackelford's Admr. v. L. & N. R. R. Co., 84 Ky., 43; Vertrees' Admr. v. N. N. & M. V. Co., 95 Ky., 314; Robinson v. L. & N. R. R. Co., 15 Ky. Law Rep., 626; Gherkin's Admx. v. L. & N. R. R. Co., 17 Ky. Law Rep., 201; Thompson's Commentaries on Law of Negligence, vol. 11, sec. 1789, Ibid, sec. 1790, sec. 1791; Southern R. Co. v. Hankerson, 61 Ga., 114; Beach on Contributory Negligence (3d revised, by Crawford), sec. 391; L. C. & R. R. Co. v. Sullivan, 81 Ky., 624; L. & N. R. Co. v. Ellis' Admr., 97 Ky., 330; Fagg's Admr. v. L. & N. R. R. Co., 23 Ky. Law Rep., 383; L. & N. R. R. Co. v. Logan, 88 Ky., 232; Brown' Admr. v. L. & N. R. R. Co., 19 Ky. Law Rep., 1873; Virginia M. Ry. Co. v. Boswell's Admr., 82 Va. State Reports, 932; Roseberry v. N. N. & M. V. Co., 19 K., Law Rep., 194.

3. As to admissibility of photographs. In re Jessup's Estate 81 Cal., 408; Brown v. Metropolitan Ins. Co., 65 Mich., 306; Gilbert v. West End St. R. R. Co., 160 Mass., 403.

MATT O'DOHERTY AND HUNT & HUNT, ATTORNEYS FOR APPELLEE.

Appellee's intestate was killed in appellant's switching yard at Lexington by a switching engine, while so under the influence of intoxicants as to be unable to take care of himself, which condition was known to those in charge of the yard and train, and on the trial appellee recovered a verdict for $4,500, which defendant seeks to reverse.

The appellant complains of the following instruction given by the court:

"It was further the duty of the persons in charge of said engine, if they discovered any person in a perilous position in said yard, and further discovered that such person was incapable of understanding the presence of danger or of guarding against danger if he did understand its presence, to use reasonable care to observe the presence of such persons and to avoid doing him an injury, &c."

We submit that this instruction taken in connection with the others given by the court clearly presents the law of the case as to the duty of appellant's servants to one in the conditiion of appellee's intestate. Fagg's Admr. v. L. & N. R. R. Co., 23 R., 389; Johnson v. L. & N. R. R. Co., 91 Ky., 681; N. N. & M. V. Co. v. Boles, 13 R., 208; Red R. Co. v. Newkirk, 12 R., 635; R. R. v. Ives, 144 U. S., 408 (31 C. C. A., 414); Barger v. Orton, 21 R., 1385.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

William H. Marrs, a resident of Lexington, Ky., on a visit to Louisville, became intoxicated, and while in this condition his friends purchased a ticket for him over the Louisville Southern Railway to his home, put him on the train, and gave his ticket to the conductor. When the train arrived at the depot in Lexington, he was in the smoker, asleep, with his head and arm hanging out of the window. One of the brakemen aroused him, and required him to go from the car to the platform of the station. The Louisville Southern Railway uses the depot of the Cincinnati, New Orleans & Texas Pacific Railway Company at Lexington. Near this depot are the private switchyards of the latter corporation. These yards are perhaps more than half a mile

in length, and covered with a network of tracks and switches; there being, probably, as many as eighteen or twenty separate tracks. The train on which Marrs was a passenger arrived at the Lexington depot at about 10:45 p. m. Within thirty or forty minutes after the drunken passenger left the car he was found by the yardmaster, Savage, asleep in the switchyard between tracks Nos. 3 and 4. Appellant's switching crew, with their engine, coming along at this time, were stopped by the yardmaster, who called to some of them to come and assist him in arousing the sleeping man. This was responded to by James H. Joyce and John Haney, who left the engine and went to where Marrs was lying. Joyce shook the sleeping man who looked up, and, with an oath, said: "Kid, did you expect to find a man with his head cut off?" To which Joyce replied: "No, but if you lie around here in this way, you will have your head cut off." Whereupon Marrs got upon his feet, "hitched up his trousers," and walked off in the direction of the Versailles pike, cursing, as he went, the men, who had disturbed him. The switching crew then went to their supper (a midnight lunch), and, returning in an hour, started with their engine along one of the tracks in the switchyard for the purpose of getting a car of stock which was to be transferred from one track to another. The engine was being backed, with several of the crew in front on the tender, keeping a lookout for the car of stock which they intended to shift. While proceeding at the rate of six or seven miles an hour, the engine ran over Marrs, who had again fallen asleep (this time on the track), inflicting injuries from which he in a few days died. To recover damages for the death thus occasioned, this action was instituted by the administratrix of his estate against both the Louisville Southern Railway and appellant. A trial

resulted in peremptory instruction being awarded in favor of the Louisville Southern Railway, and a verdict and judgment against appellant for the sum of $4,500, of which it now complains.

Was appellant entitled to a peremptory instruction? This is the substantial question presented in the record.

There was no relation of passenger and carrier between Marrs and appellant, and therefore his entrance into the private switchyard of the corporation made him a trespasser; and, if those in charge of the switch engine had run it over him when he was first found in the yard, then, undoubtedly, appellant would have been entitled to a peremptory instruction under the evidence as adduced on the trial, because, he being a trespasser, its employes owed him no duty, except to refrain, after his peril was discovered, from injuring him, if this could be done by the exercise of ordinary diligence. But having found him drunk and asleep in the yard, could they arouse him, and start him wandering in the dark, through the network of switches and tracks, and then say, when they afterwards ran over him, that they owed him no lookout duty because he was a trespasser? We can not sanction so cruel and inhuman a principle. Both Savage, the yardmaster, and Haney, the foreman of the switching crew, saw Marrs on the Louisville Southern train when it reached the depot, and knew that he was a passenger thereon and drunk. When they saw him in the switchyard, asleep, and aroused him, they recognized him as the man they had seen on the train. They knew he was still intoxicated, and the fact that within so short a time he was found by them asleep in the switchyard was all the evidence that reasonable men required to know that, owing to his condition, he was unable to take care of himself, and more than probably was dazed and lost. Under these circumstances, it was

their duty either to see him safely out of the yard, or, in default of this, to exercise at least ordinary care to avoid injuring him in moving the switch engine about where, under the circumstances, it was reasonable to anticipate his presence. Haney and Savage, within forty minutes before they found Marrs asleep in the switchyard, had seen him asleep on the train. They had seen him aroused from his stupor by the brakeman and put upon the platform, and when they found him, within so short a time after being aroused by the brakeman, again in a stupor in the switchyard, they were bound to know that his condition was such as to render him incapable of taking care of himself; and, this being true, as we have before said, common humanity forbade them simply to arouse him from where they found him asleep, and start him on another walk, merely to sink into a torpor in the yard a second time. Indeed, the action of these men was a positive injury to the decedent, for, as he lay between tracks Nos. 3 and 4, he was then, at least, safe from being run over. When they aroused him from this position, and started him on his walk in the dark through the yards, they subjected him to the perilous chance, when again overcome by the liquor, of assuming a position of greater danger than he was occupying at first. This chance subsequently became a reality. When the unfortunate man was overcome a second time in the yard, he went to sleep on one of the tracks instead of between them. Under the circumstances, the switching crew should have done either more or less than they did, so far as the safety of the deceased was concerned.

We fully concede that Marrs being drunk did not make him any the less a trespasser when he first went into the yard of the corporation, and his intoxication added no new duty from it to him then. But when its servants actually dis-

covered him, trespasser though he was, they owed him the duty to refrain from injuring him, and this duty was as comprehensive as the helplessness of his condition demanded to insure his safety from injury by them. The fact that his senses were overcome by liquor was demonstrated by what the servants of the corporation actually knew at the time they found him in the yard. It was no longer a question of surmise, but one of positive knowledge. That he was not a tramp awaiting an opportunity to steal a ride they knew from the fact that they had seen him arrive in Lexington as a passenger on the Louisville Southern train, and we think we have a right to assume, from all the evidence in the case concerning Marrs, that his appearance indicated him to be what he really was—an unfortunate man on a spree. The servants of the corporation, after finding him in the yard, could not shut their eyes and close their faculties to what must have been apparent to the most casual observer, and say that, under the circumstances surrounding Marrs, they owed him no duty, and could after that treat him as a trespasser. They knew he was intoxicated and in the yard, and, having seen him twice before within an hour in a drunken stupor, they had no right to assume that when left to himself he would not again sink into a torpor, as he had done twice before.

This case comes within the principle of Fagg's Adm'r v. Louisville & Nashville R. Co., 111 Ky., 30, 23 R. 383, 63 S. W., 580, 54 L. R. A., 919. In that case the employes of the railroad knew a drunken man had entered a deep cut through which a train was soon expected. They knew that, if this train passed while he was in this cut, his life would be in peril. With this knowledge, they permitted the train to run into the cut without informing those in charge of the perilous position of the unfortunate man. He was killed,

Cincinnati, N. O. & T. P. Ry. Co. v. Marrs' Admx.

and we held the corporation responsible. The principle in that case is identical with that at bar, although the facts on the surface are somewhat variant. The servants of appellant knew that Marrs was in the yard in a drunken condition. They had seen him asleep in a stupor. They were bound to know that the chances were that, as soon as the stimulus of their presence was removed, he would again succumb to the benumbing influence of the liquor with which he was intoxicated. This being true, they owed him one of two alternative duties—either to see him safely out of the yard, which common humanity required, or, failing in this, to watch out for him as the engine was moved about in the corporation's business. The case of Brown's Adm'r v. Louisville & Nashville R. Co., 103 Ky., 211, 19 R., 1873, 44 S. W., 648, does not support appellant. In that case the servants of the corporation had no right to suppose, after the drunken passenger was removed from the train at London, he would seek the railroad track, as a bed. In this case the employes of appellant knew that Marrs was likely to do this, for they had just aroused him up from such a position. Nor is the case of Railroad v. Boswell's Adm'r 82 Va., 932, 7 S. E., 383, authority in favor of appellant's claim to a peremptory instruction. In that case the track walker found the trespasser lying on the railroad track. He accosted him, whereupon the man aroused up on his elbow, and apparently assented, when told to get off the track, as a train would presently be coming along. The corporation's servant did not know that the trespasser was drunk, or in any other way physically incapacitated; the court on this point stating: "There was nothing in the conduct of Boswell which could lead Harrison to suspect that he was drunk or physically disabled. When accosted by Harrison,

and told that he must get up and get off the track—that a train was coming presently—he (Boswell) got partly up, leaned on his elbow, and assented to the suggestion in such a manner as to convince Harrison that he understood him; and, under these circumstances, Harrison had the right to presume that Boswell would take such measures to protect himself from danger as reasonable persons would be sure to take under such circumstances." In the case at bar, appellant's servants knew Marrs was drunk, and the circumstances surrounding him were such as would lead any reasonably prudent person to believe that he was incapable of caring for himself. Under these circumstances, we think they, after having discovered his perilous condition, owed him the duty of refraining from injuring him by exercising the care for his safety which we have indicated.

The trial court correctly overruled appellant's motion for a peremptory instruction, and the instructions given were as favorable to the corporation as it merited. Perceiving no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.

Petition for rehearing by appellant overruled.