ED CAREY, Appellant, v. FRANK R. DAVIS et al., Appellees.

**MASTER AND SERVANT:** Duty to Care For Injured Servant. A
1    master, though entirely without fault, is under legal obligation to
extend reasonable care to his servant who, in the master's presence,
is rendered helpless by sudden and unlooked-for sickness. Especially
will the master be liable in damages if he assumes to care for such

servant, but leaves him in an exposed condition which proves to be the proximate cause of an injury.

EVIDENCE: Judicial Notice—Period of Sunstroke. The court will not 2 assume to say judicially just what degree of heat is necessary in order to produce a sunstroke.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

JANUARY 12, 1921.

ACTION at law, to recover damages. Demurrer to petition having been sustained, the plaintiff elected to stand on his pleading without amendment, and judgment was entered thereon in defendants' favor for costs. Plaintiff appeals.—*Reversed.*

*H. S. Thomas,* for appellant.

*Miller & Wallingford,* for appellees.

PER CURIAM.—Reduced to brief terms, the petition alleges that plaintiff was in the employment of defendants as a farm laborer, and that, while so at work for and under the direction of defendants, on April 20, 1916, in the excavation of a gravel pit, he became overheated, and fell in a faint or fit of unconsciousness, and, having partially recovered therefrom and resuming work, he again suffered an attack of that nature, and while he was in that condition, the defendants caused him to be removed, and laid in a wagon box at or near the place where he had been at work, and left there in an even more exposed condition, unattended and without care or protection, for a period of four hours or more, until plaintiff had recovered sufficiently to make his own way home, with great difficulty.

1. MASTER AND SERVANT: duty to care for injured servant.

He charges defendants with negligence in failing to give him reasonable care in his sick and helpless condition, and in aggravating his suffering by placing him in the wagon box, exposed to the rays of the sun and to the effect of weather conditions, whereby he became sick, confined to his bed, and has been wholly incapacitated for labor, and has suffered and still suffers

pain and distress,—for all of which he asks to recover damages.

To this pleading the defendants demurred, on the ground that no facts are alleged showing actionable negligence on defendants' part, or any duty on their part to furnish the plaintiff the help or relief which he says he needed.

It is further said, in support of the demurrer, that plaintiff's claim is, in effect, an allegation that he suffered a sunstroke at the time and place in question, and that the court will take judicial notice that sunstroke on April 20, 1916, in Polk County, Iowa, is impossible.

The court sustained the demurrer generally; and, plaintiff electing to stand on his pleading without further amendment, judgment was entered in defendants' favor for costs; and plaintiff appeals.

I.   Referring first to the final ground of demurrer, the assumed impossibility of sunstroke in this latitude as early as April 20th, it is quite without merit.   In the first place, the petition does not allege that plaintiff suffered sunstroke.   It is- true, it does repeat, in varying terms, that he was overcome by heat, but it does not attempt to state the nature of the ailment so produced.  The court has no knowledge or notice, judicial or otherwise, as to what degree of solar heat is necessary to produce sunstroke, nor is it able to name the day or date when the open season for its depredations begins; and surely counsel will hardly contend that, in passing upon a demurrer, the court is authorized to admit the testimony of experts on these matters.

2. EVIDENCE: judicial notice: period of sunstroke.

II.   The other question calls for more serious consideration. There is no allegation or claim that the faintness or prostration of the plaintiff was caused or in any manner produced by the neglect or misconduct of the defendants.  So far as the pleading goes, the cause of his ailment is entirely unknown, a misfortune for which damages are recoverable from no one. · If there be any failure of legal duty alleged, it is in the charge that, plaintiff being stricken down and rendered helpless while in the defendants' service, and upon their premises and in their presence, it became their duty to render him the needed aid and relief.  Did such legal duty arise, under the alleged circumstances? / It is unquestionably the well-settled general rule that, in the absence

of any agreement or contract therefor, the master is under no legal duty to care for a sick or injured servant for whose illness or injury he is not at fault. Though not unjust in principle, this rule, if carried unflinchingly and without exception to its logical extreme, is sometimes productive of shocking results. To avoid this criticism, there is a tendency of the courts to hold that where, in the course of his employment, a servant suffers serious injury, or is suddenly stricken down in a manner indicating the immediate and emergent need of aid to save him from death or serious harm, the master, if present, is in duty bound to take such reasonable measures or make such reasonable effort as may be practicable to relieve him, even though such master be not chargeable with fault in bringing about the emergency. Says Judge Cooley:

"We shall not stop to prove that there is a strong moral obligation resting upon anyone engaged in a dangerous business, to do what may be immediately necessary to save life or prevent an injury becoming irreparable, where an accident happens to a person in his employ. We shall assume this to be too obvious to require argument." *Marquette & O. R. Co. v. Taft,* 28 Mich. 289.

In explaining a similar holding, the Indiana court states the limitations of this rule as follows:

"We did not decide that a corporation was responsible generally for medical or surgical attention to a sick or wounded servant; on the contrary, we were careful to limit our decision to surgical services rendered upon an urgent exigency, where immediate attention was demanded, to save life or prevent great injury. We held that the liability arose with the emergency, and with it expired." *Terre Haute & I. R. Co. v. McMurray,* 98 Ind. 358.

The case of *Depue v. Flatau,* 100 Minn. 299 (111 N. W. 1), though dissimilar in its facts, is related in principle to the one we have before us. There, the plaintiff called at the home of the defendant on a business errand, and accepted an invitation to dinner. As evening came on, he was suddenly taken sick, and requested the privilege of remaining over night; but this was refused. Defendant thereupon helped the plaintiff into his cutter, and started him in the direction of his home. Plaintiff

had ridden but a short distance when he fell from his vehicle into the snow, where he lay all night, before he was rescued in a badly frozen condition. Having brought suit for damages, it was contended for defense that defendant was under no duty to entertain or keep the plaintiff in his own home, and that the obligation he was under, if any, was moral only, and for a breach thereof no action would lie. This contention was over-ruled, and plaintiff was allowed to recover. The court there says that the case falls within "the comprehensive principle that, whenever a person is placed in such a position with regard to another that it is obvious that, if he does not use due care in his own conduct, he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation in which he finds himself * * * to avoid such danger; and a negligent failure to perform the duty renders him liable for the consequences of his neglect."

Now it is true that the cited case does not involve the relation of master and servant, nor was there any other business relation in which either owed a legal duty to the other; but the plaintiff was rightfully in the defendant's home as a temporary guest, a privilege which ordinarily the defendant could terminate at a moment's notice. The fact, however, that he became suddenly ill, and in a condition rendering it unsafe for him to take the road, introduced a new factor into the situation, charging the defendant with the duty not to expose the sick man to the hazard of perishing in the winter storm.

In the instant case, there was a more tangible and intimate relation between the parties. Plaintiff was the defendants' employee, working upon their premises and under their immediate personal direction and control. Assuming the truth of his petition, he became suddenly ill, prostrate, and helpless, in the defendants' immediate presence. Does it put any undue strain upon the law of master and servant to hold that, under such circumstances, the master was required to make some reasonable effort to render him the aid his immediate necessities demanded? We are disposed to think not. Not necessarily that they were bound to employ a physician, or to take him into their own home, but, assuming his helplessness, they could at least have seen

that he was placed in some proper shelter, and his family or friends notified.

Not quite in point, yet illustrative of the readiness of the courts to attach legal character to a clear moral obligation, when the relation of the parties is such as to justify it, is our own recent case of *Adams v. Chicago G. W. R. Co.*, 156 Iowa 31. There, the plaintiff was rightfully ejected from the train, for intoxication and for refusal to pay his fare. The occurrence took place on a very cold winter night. He was put off the car at a small country station. There he entered the depot, and the train passed on. Soon afterward, the station agent, wishing to close the building, told the plaintiff he must go. Obeying the order, plaintiff, though visibly drunk, left, and, in his half-conscious condition, sought refuge in a corncrib, where he was very badly frozen. In holding that a recovery might be had if plaintiff's theory of the act of the agent should be established by the evidence, we quoted from *Heaven v. Pender*, L. R. 11 Q. B. 503, to the effect that the rule which the books suggest "is that, whenever one person is, by circumstances, placed in such a position with regard to another that everyone of ordinary sense who did think would at once recognize that, if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." Applying the law as stated, we further said we would hold that:

"If it appeared that the plaintiff was in such a drunken and sodden condition that he was unable to take care of himself, either by walking to Ft. Dodge, eight miles distant, as it is claimed he started out to do, or to obtain reasonable shelter from the inclemency of the weather, and if defendants, knowing him to be in such condition, compelled him to leave the depot, and thereby expose himself to the dangers of an extremely cold night, instead of allowing him to remain in the depot until it was finally closed for the night, or longer, or assisting him to some place where he might be sheltered from the cold, and therein they failed to pursue the course which an ordinarily prudent man would have, under like circumstances, then they are liable."

Such a holding places no very grievous burden upon anyone.

III.    There is another aspect of this case not yet specially considered.  The petition to which the demurrer was sustained is stated in two counts.  The first count, as we have already seen, charges the defendants with failure of duty in refusing to render him the aid and care which his alleged stricken condition reasonably required at their hands.  The second count repeats the same charge, and further alleges that, while he was in such unconscious and helpless condition, the defendants caused him to be taken from the place where he was lying on the ground, and placed in a wagon box near at hand, where he was exposed to increased heat and discomfort and injury, and then abandoned him for the remainder of the afternoon, a period of several hours, with the result that he was made sick, and caused to undergo much suffering, and became permanently incapacitated to perform labor.

It is argued in his behalf that, even if it is held that defendants would otherwise not be liable, yet, after they had assumed to pick him up in his unconscious condition, and remove him from the place where he had fallen, it then became their duty to use reasonable care in so doing not to aggravate his misfortune; and that, for failure in this respect, with resulting injury to him, an action for damages will lie.  This proposition is quite in accord with the reasons and principles which underlie the law of negligence.  One person, seeing another in distress, may or may not be under legal obligation to afford him relief; but if he does undertake it, he is, of course, bound to act with reasonable prudence and care, to the end that, if his effort be unavailing, it shall at least not operate to increase the injury which he seeks to alleviate.  If, for example, the driver of an automobile discovers an injured child, for whose hurt he is not responsible, lying in the street, he may, if sufficiently inhuman, pass it by without attention, and incur no legal liability.  If, however, he picks up the child, under a kindly impulse to take it to a hospital, but while on the way changes his mind, and replaces it in the road, where it is run over and killed by another car, would the law tolerate a defense by such a person that the child was not his own; that he did not hurt it; that he was under no

legal duty to provide for its support or its nursing or treatment; and that he left it in no worse condition than he found it? The illustration is an extreme one, but it fairly emphasizes the rule that, wherever a man comes into such relation or contact with another that, in the language already quoted from the Minnesota court, it is "obvious that, if he does not use due care in his own conduct, he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation in which he finds himself, and with which he is confronted, to avoid such danger."

The same principle was applied in *Cincinnati, N. O. & T. P. R. Co. v. Marrs' Admr.*, 119 Ky. 954, where an intoxicated person, being found asleep in a railway yard, was aroused from his stupor and ordered off the tracks; but, instead of using any effort to assist him, or to see him to a place of safety, the employees permitted him to stagger farther into the network of tracks, where he was killed.

So, too, in our case of *Adams v. Chicago G. W. R. Co.*, supra, although there was no relation of master and servant or carrier and passenger or host and guest, yet, by no concert of action or purpose, the parties (one of whom was incapacitated to care for himself) had been brought into contact, in a manner making it plain that, if the one in possession of his normal faculties did not use ordinary skill and care in his own conduct, he would cause danger or injury to the other. This relation and these circumstances gave rise to the duty to exercise such reasonable care.

Stating this general rule, the Minnesota court, in *Depue v. Flatau*, 100 Minn. 299, 304, adds:

"It applies with greater strictness to conduct towards persons under disability, and imposes the obligation, as a matter of law, not mere sentiment, at least to refrain from any affirmative action that might result in injury to them."

Assuming, as we must for the purposes of the appeal, the truth of the plaintiff's allegation, we are of the opinion that the petition is not vulnerable to the demurrer, and for that reason the judgment and ruling appealed from cannot be sustained.

It must be borne in mind, however, that in this decision we confine our expression of opinion to consideration of the

single question whether the petition states a cause of action. What damages may be recovered if the allegations of the peti-tion are sustained on the trial, and the nature and measure thereof, we do not consider or decide.

The judgment below is reversed, and cause remanded, with direction to the district court to overrule the demurrer.—*Reversed and remanded.*