## BARTLEY v. CINCINNATI, N. O. & T. P. RY. CO.

### No. 309.

District Court, E. D. Kentucky.

Oct. 4, 1946.

R. L. Pope, of Knoxville, Tenn., and Caylor and Caylor, of Whitley City, Ky., for plaintiff.

Tye & Siler and H. H. Tye, all of Williamsburg, Ky., for defendant.

FORD, District Judge.

On the night of July 1, 1945, Carl Bartley was a passenger on the defendant's train. This is an action by Bartley's administratrix to recover damages for his death alleged to have proximately resulted from the negligence of the defendant, its agents and servants in charge of its train in wrongfully ejecting Bartley therefrom. The parties having waived trial by jury, the Court having heard the evidence and the case being submitted for judgment upon the law and the facts, in conformity with Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the Court, being advised, finds the facts specially and separately states conclusions of law thereon as follows:

## Findings of Fact.

■ Carl Bartley, a young soldier about 22 years of age, having recently returned from service in the Army of the United States in France and Germany, while on furlough for recuperation pending his re-assignment to further military duties, left Camp Atterbury, Indiana, for a visit to his parents in Kentucky. At about 6 P.M. on July 1, 1945, he boarded defendant's south bound passenger train No. 43 at Cincinnati, Ohio, traveling upon a "furlough ticket" upon which his destination was shown to be "Whitley," a small flag station on defendant's line of railroad located about two miles north of the town of Stearns, McCreary County, Ky. The home of Bartley's parents was located about midway between Whitley station and Stearns. Bartley carried a large duffel bag weighing about 150 pounds and a small hand satchel. Soon after boarding the train, Bartley met with a group of other soldiers traveling on the same train with whom he began drinking whiskey. By the time the train reached Somerset, where conductor Sam Touchstone took charge, Bartley's drunken condition was obvious to the conductor as well as to the passengers. After the train left Somerset, in the words of the conductor, "He was all up and down through the train everywhere; * *. * he was mostly looking for whiskey; * * * talking loud, bothering passengers and cursing; * * * he was getting beyond control."

The evidence shows that as he passed back and forth on the train he would sometimes fall or pitch over on seated passengers; he was not abusive or threatening to other passengers but was seeking more whiskey from both men and women. He evidently succeeded in this effort for his drunken condition increased to such an extent that the conductor found it necessary to summon two members of the Military Police who were on the train to take charge of him, and with considerable difficulty they remained in charge of him for approximately the last twenty miles of his journey.

The train reached Whitley station at about mid-night, and the conductor directed the Military Police to there put Bartley off. By taking him by the arm they succeeded in ejecting him after the conductor put his duffel bag and hand satchel to the gravel platform of the station. Bartley was then so drunk and bewildered that he cursed and threatened the Military Police. He was able to descend the steps by placing his hands upon the shoulder of a lady passenger who preceded him. As the train pulled away from the station, a passenger seated on the near side of the train saw Bartley in a position indicating that he had fallen to the ground after alighting from the train. It was a very dark night. There was no light of any kind at the station. No agent or other employee of the defendant and no other persons were there except Mr. and Mrs. Sidney Hicks and three small children who alighted from the train ahead of Bartley. They left immediately without giving Bartley any assistance.

Adjacent to the station platform at Whitley, the defendant maintained double tracks with north bound freight and passenger trains passing on the east track and south bound trains on the west track. The railroad tracks were on the east side of the station platform and on the west side was located a highway running approximately parallel to the railroad. Numerous freight and passenger trains passed in both directions over these tracks during the night. Since it was not a regular stop, passenger trains stopped there only when flagged. The conductor, upon whose orders Bartley was ejected from the train, well knew the con-

ditions at this place and knew that defendant's south bound passenger train No. 27 was following him and would be along in about an hour. South bound trains approached the station on a curve of about 45 degrees, located at a distance of approximately 75 to 100 feet north of the station.

When Bartley was put off the train he was in such a drunken condition that he was obviously unable to appreciate and protect himself from the danger of passing trains. He was entirely unable to know or understand what he was doing or to take care of himself. His helpless condition was so obvious, it was, or in the exercise of ordinary care should have been, readily apparent to and recognized by the conductor upon whose orders he was ejected. In causing Bartley to be ejected from the train at the time and place described, the conductor failed to exercise ordinary care for the safety of his drunken and helpless passenger.

After his ejectment from the train, Bartley wandered around in the darkness, completely bewildered and oblivious of his surroundings. Time and again he was heard to cry out "Where am I, Where am I," and to utter other calls for aid. He apparently wandered on the railroad tracks for a short distance in an opposite direction from his parents' home. Early the next morning, parts of Bartley's mangled body were found scattered on the track over which south bound trains passed during the night. A part of his body and one leg were on the track about three-fourths of a mile south of Whitley station, his duffel bag and hand satchel were found about 50 feet south of the station and "his skull was lying about 20 feet south of the depot * * * on the south bound track."

The preponderance of the evidence shows that Bartley wished to remain on the train until he reached the railroad station at Stearns which was only two miles south of Whitley and which would have been reached a few minutes later. The station at Stearns was open, well lighted and in charge of an agent of the defendant. A railroad policeman was on duty at that station. These facts were well known to the conductor, Mr. Touchstone. To have permitted Bartley to remain on the train a few more minutes until it reached the station at Stearns would not have been dangerous to passengers or trainmen for Bartley was then in charge of the Military Police.

Until Bartley entered military service, approximately two years before his death, he made his home with his parents. He attended the Whitley Graded School, but, so far as disclosed by the evidence, he was not trained for nor skilled in any special line of work or profession. Immediately prior to his induction into the Army, he was engaged as a common laborer, handling lumber, in the employ of the Stearns Coal & Lumber Company. His earnings amounted to about $25 or $30 a week. Although at the time of his death it was obvious that he was addicted to excessive drinking of whiskey, he was in reasonably good health. Considering his age, earning capacity, condition of health, personal habits and his probable life expectancy, in the light of the evidence presented, the sum of Fifteen Thousand Dollars ($15,000) will fairly and reasonably compensate the estate of Carl Bartley for the loss of his power to earn money.

## Conclusions of Law.

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. In exercising the right to eject a helpless passenger, a carrier must have regard for the time, place and circumstances under which the act of removal is performed and must exercise ordinary care not to imperil his life nor subject him to danger of bodily injury, and the duty to exercise such care is rendered no less imperative by the fact that the passenger was disorderly or had reached the destination called for by his ticket. Even a trespasser who is not imperiling the lives of passengers or officers in charge of the train is entitled to this protection. Louisville & N. R. Co. v. Tuggle's Adm'r, 151 Ky. 409, 152 S. W. 270; Fagg's Adm'r v. Louisville & N. R. Co., 111 Ky. 30, 63 S.W. 580, 54 L.R.A. 919.

3. Under the law of Kentucky, which is controlling in this case, it was the duty of the defendant, its agents and serv-

ants in charge of the train upon which Carl Bartley was a passenger on the night of July 1, 1945, upon discovering that, by reason of his extreme intoxication, he was in such physical and mental condition as to render him unable to appreciate and avoid the dangers surrounding him and so helpless as to be incapable of taking care of himself, to exercise ordinary care to avoid exposing him to the great peril in which he was left when put off the train in darkness, at midnight and unattended, at Whitley station in McCreary County, Kentucky, and the failure to exercise such care constituted negligence which was the proximate cause of Carl Bartley's death, for which the defendant is liable in damages in such an amount as will fairly and reasonably compensate the estate of Carl Bartley for the loss of his power to earn money.

4. The plaintiff is entitled to judgment against the defendant in the sum of $15,000 and costs.