## Borderland Coal Company v. Kerns.

(Decided June 16, 1915.)

### Appeal from Pike Circuit Court.

1. Evidence—Damages—Action for Personal Injuries.—Where one is sued for a personal injury, the declarations of an agent of the defendant, made after the time of the transaction, in which the injuries were sustained, and not under such circumstances as to constitute a part of the res gestae, are not competent evidence against the defendant.

2. Evidence—Damages—Action for Personal Injuries.—The declarations of a mine superintendent, as to the incompetency and unfitness of an employe, made before an injury is sustained, which is alleged to have been caused by the incompetency of such employe, is competent evidence against the master, as showing that the master had knowledge of the incompetency of the employe, but declarations made by such superintendent upon such subject, after the injury is sustained, are not competent, as the ground upon which declarations of the superintendent are admissible, at all, is that he is the agent of the master, and his knowledge is imputed to the master, but he is not an agent for the purpose of making admissions damaging to the master, after the transaction in which the injury is sustained.

3. Evidence—Res Gestae.—Where an injury is sustained by an employe, and some one goes to a telephone and calls the superintendent of the mines, and informs him of the occurrence, a declaration of the superintendent made at that time, he not being present at the time and place of the transaction, and not one of the actors in it, is not a part of the res gestae.

J. J. MOORE, JAMES P. WOODS, S. D. STOKES and JOHN F. BUTLER for appellant.

ROSCOE VANOVER, D. M. HOWERTON and E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, John W. Kerns, was an employe of the appellant, Borderland Coal Company, which was engaged·in mining coal in Pike County. His main duties, which appellant required him to perform under his employment, were the operation of the pump, and keeping the mines free from water, which interfered with the miners in their duties, and setting timbers to protect the roof of the mines, and in the absence of the track layer, it was his duty to look after the tracks in the mines, and to do whatever was necessary to keep the tracks in condition. About the 10th of July, he observed, that at a certain point in the mines there was a portion of the track which needed taking up, and the employe, whose regular duty it was to do this, being absent, and the duty to do same devolving upon the appellee, he. uncoupled four of the rails, and with the assistance of another, pulled them upon top of each other, in a pile, and he then went to see about the tipple, with the intention of returning from there and to take care of the rails, but when he returned in thirty or forty minutes, a quantity of debris from the roof had fallen upon the rails and he was unable to extricate or remove them by his own exertions. In this mine a motor was used to propel cars, and other service, and it was, also, used to pull 1ails from under loads of debris, where the extrication of the rails required the exertion of more strength than could be employed by men. A man, whose name was Pearly Edwards, was. engaged by the appellant for the duty of operating the motor, and was at this time engaged in the regular operation of the motor, for the purposes for which it was used. On the following day the appellee notified Edwards of the rails above mentioned, and that it was necessary for him to bring the motor and "pull" the rails. The appellee secured a chain, which was eight or ten feet in length, and repaired, in company with his "helper," Fred Thompson, to the place where the rails were and awaited the coming of the motor. The rails were twenty to thirty feet in length, and the debris had fallen and was resting upon the rails, chiefly at the end opposite to the one at which the motor would be attached to draw them out. In the end of each of the rails was a hole, except as to one of them, the portion of which, containing the hole, had been broken off. Two of the rails were curved rails, used in laying the tracks, when it was necessary to make a curve in it. The other rails were straight. The roof of the

mine, at this place, was three feet and eight inches from the floor. The rail nearest the side upon which appellee stood was about seven feet from the "ribs" or wall of the mine, and three or four feet from the rail was a pile of debris, which had been thrown there out of the way. Upon the other side of the track the distance was smartly greater from the track to the wall. A hole went through the wall upon the side of the track where appellee was, into another room, but it is not clear that appellee knew of the existence of this hole. When Edwards arrived with the motor, he was accompanied by the brakeman, Roy Black. The chain was fastened to the end of a rail by inserting a bolt through the hole in the end of the rail and was then attached to the motor, when the motorman would put the motor in operation, and draw the rail from underneath the stone, which had fallen upon it. Three of the rails were thus drawn without difficulty. There is some confusion in the evidence, as to which one of the parties present attached the chain to the rails, but it appears, that as soon as a rail was drawn, that appellee and his "helper" would pick up the rail and lay it aside. The remaining rail was one of the curved ones, and the one which had no hole in the end of it, to which the chain could be attached. It was attempted to attach the chain by putting it around the rail a few inches from the end, and inserting one link of the chain through another, and thus fasten it to the rail. When the first attempt was made, and the motor started forward, it drew the end of the rail around toward the car, and the chain slipped off. The chain was then wrapped around the rail further from the end of it, than was first attempted, probably two or three feet from the end. It is not clear, exactly, who it was that tied the chain to this rail, at this time. Edwards, however, got down from the motor, and assisted. He then said: "I will pull it." He then backed the motor up to the end of the rail, producing all the slack in the chain of which it was capable, and then put on all the power of which the machine was capable, which caused the motor to jump forward, producing a jerk, which loosened the rail, and jerked it from under the debris, and did not stop the motor until it had gone forward about twenty feet. The front end of the rail struck a cross-tie, cutting it about half in two, and causing the rear end to elevate in the air, and to fly around to one side, and strike the appellee upon the face, knocking out

one eye, breaking his jaw, and knocking him insensible for the time being, and resulted in permanent injuries to him. At the time appellee was struck, he was sitting upon some debris four or five feet from the rail, and his "helper" was standing near him. The brakeman was upon the opposite side, about the same distance from the rail, and each were about fourteen feet from the rear end of the rail. The appellee and the others were occupying the same places, with reference to the rails, they occupied when each of the other three rails were drawn by the motor.

The appellee states that he had never seen but one rail drawn previous to this time, by the use of a motor, but the evidence shows that in drawing rails under circumstances of the kind, it was customary among the miners to take positions upon each side, at about the distance these men did, and to await the drawing, unless the motorman informed them, that the particular operation was dangerous, and to go, further, away. There was proof showing that the customary and ordinary way to draw rails, under circumstances similar to the one in the instant case, was for the motorman to put on a slight degree of power at first and to move forward steadily, increasing the power, if necessary, and if a steady pull failed to remove the rail, he would then back the motor up to or near the end of the rail, producing some slack in the chain, and then go forward with a jerk, and thus loosen the rail, keeping the motor under control, and to immediately shut off the power when the rail was loosened. The power could be withdrawn instantaneously. Thus operated, it was contended the persons present incurred no danger from injuries, such as occurred to appellee.

The appellee filed his petition against appellant to recover damages for the injuries sustained by him. In his petition he alleged that the motorman, Edwards, was incompetent for his duties, and an unfit servant to operate a motor; that he was reckless and careless in the operation of the motor; that the incompetency, unfitness, recklessness, and carelessness of Edwards to handle, and in handling the motor, was the sole, direct, and proximate cause of appellee's injuries; that his incompetency, unfitness, carelessness, and recklessness, in the operation of the motor, was known to appellant, or could have been known by it in the exercise of ordinary care, but was unknown to appellee, and could not

have been known to him by the exercise of ordinary care, until he received the injuries complained of.

The appellant, by its answer, denied the allegations of the petition, and, also, plead contributory negligence upon the part of appellee, and that the injury he received was one of the assumed risks of his employment. The affirmative allegations of the answer were denied by reply.

Upon the issues thus made up, a trial was had before the court and a jury, which resulted in a verdict of the jury in favor of appellee, fixing the damages at $7,000.00, and a judgment of the court in accordance therewith.

The appellant filed grounds and moved the court to grant a new trial, which was overruled by the court. Exceptions were properly taken and saved.

The grounds relied upon for reversal of the judgment are:

First. The court erred in admitting incompetent evidence over the objection of appellant.

Second. The court erred in overruling appellant's motion for a direct verdict in its favor, by the jury, at the close of the evidence of appellee, and at the close of all the evidence.

Third. The court erred in giving instructions to the jury, and in refusing to instruct the jury, as requested by appellant.

Upon the trial, and over the objection of the appellant, the appellee was permitted to prove by various witnesses, that after the time of the transaction, in which appellee received his injuries, they heard the superintendent of the appellant's mines, who was in authority at the time the injuries were sustained, make declarations to the effect, that Edwards, the motorman, was, too, reckless to be intrusted with the operation of the motor. It is not necessary to state the names of these witnesses, or the declarations, which they proved, were made by the superintendent. Upon the issues, as to whether or not the appellant knew, or by the exercise of ordinary care, could have known of the incompetency and unfitness of the motorman to operate and handle its motor, in performing the duties incumbent upon the motorman, in the operation of its mines, and the negligence of appellant in employing and retaining in its employ such an incompetent servant, the declarations of the mine superintendent, who had the authority to

employ and to discharge the motorman, tending to show his incompetence and unfitness, and which were made before the time upon which appellant sustained his injuries, are competent evidence to prove the appellant's knowledge of the incompetence and unfitness of the motorman. The only knowledge of the incompetence and unfitness of the motorman, which would show negligence on the part of appellant, which could cause the injuries to appellee, would necessarily be that knowledge had by it, previous to the time the injuries were sustained. Knowledge acquired by appellant, thereafter, could not be imputed to it as negligence resulting in the injuries. The reason why the declarations of the mine superintendent, regarding the incompetency of the motorman, made before the injuries were received, were competent as evidence against appellant, is that he was the agent of appellant, but he could not upon principle be held as the agent for appellant to make statements damaging to it, after the occurrence, and the statements of such an agent would be mere hearsay. This court has uniformly held, that such statements of an agent, made after the injury complained of, are not competent as against the principal. Embry v. L. & N. R. R. Co., 18 R., 437; C. & O. Ry. Co. v. Smith, 101 Ky., 111; L. & N. R. R. Co. v. Webb, 99 Ky., 332; Parker's Admr. v. Cumberland T. & T. Co., 25 R., 1391; East Tennessee Telephone Co. v. Simmin's Admr., 99 Ky., 404.

The authorities relied upon by the appellee to justify the proof of the declarations of the mine superintendent after the injuries were sustained, do not bear out such a conclusion. They are all cases, wherein declarations of the parties participating in the act, resulting in the injury, were admitted upon the ground that they were a part of the *res gestae.* In Brown v. Louisville, 21 R., 995, the statement allowed to be proved was made by the injured party, who had fallen from a car, and the declaration was made as to how the fall occurred, just as she was being taken up from the ground.

In L. & N. R. R. Co. v. Shaw's Admr., the declaration was that of a man seeking damages on account of being kicked from a train, and was a statement made to that effect, within four or five minutes after the occurrence, and as quickly as he was found. In Floyd v. Paducah Ry. Co., 23R., 1077, the statement was that of the motorman, as to how the train happened to run upon

the complainant, made immediately upon the occasion of the occurrence, at the same place, and just as the injured man was gotten from under the car.

In L. & N. R. R. Co. v. Earl, 94 Ky., 368, a brakeman was injured by a fall, and within a few seconds thereafter, the statement was made by him, which was held to be a part of the *res gestae*. In McLeod, Receiver v. Ginther's Admr., 80 Ky., 401, the injury resulted from a collision of two trains, and the statement allowed as *res gestae* was made within a minute or two by one of the train men, and while the injured were being sought for. The case of L. & N. R. R. Co. v. Foley, 94 Ky., 220, does not seem to be in line, entirely, with the other adjudications of this court, but as was said by this court in McLeod v. Ginther's Admr., *supra*:

"What constitutes *res gestae* is often difficult to determine, as the relationship of facts, when the thing done is composed of different agencies and actions, separated more or less in point of time and manner of performance, is not always palpable, and though necessary, may be frequently obscured by the multiplicity of particles which go to make up the main fact under consideration (1 Greenleaf, Sec. 108). Hence the particular facts of each case must determine the relevancy of declarations sought to be proven as part of the acts or facts constituting and legally belonging to the cause of action."

In I. C. R. R. Co. v. Outland's Admrx., 160 Ky., 725, this court, further, said:

"Declarations admissible as part of the *res gestae* must, as a general rule, be made by one of the actors in the affair, contemporaneous in point of time with the particular transaction, at or near the place of its occurrence, and must explain the main fact; but a declaration so far removed in point of time from the main fact as to make it a mere narrative of a past transaction, or a declaration, which does not explain the principal fact, or which was made at some distance from the place of its occurrence, is not admissible as substantive evidence as a part of the *res gestae*."

This doctrine is stated in Greenleaf, Section 107; Elliott on Evidence, Vol. 1, Section 542; and upheld in I. C. R. R. Co. v. Houchins, 31 R., 93; L. & N. R. R. Co. v. Ellis, 97 Ky., 330; L. & N. R. R. Co. v. Molloy, 122 Ky, 219, and in many other cases.

It is not insisted that any of the declarations of the mine superintendent, in reference to incompetency of the motorman, is a part of the *res gestae,* except the statement detailed by the witness who says, that a few minutes after the injury was sustained by appellee, that he went to the telephone and called up the superintendent, who was at some place not shown by the proof, and informed him of the occurrence, when the superintendent said in substance, that he "was looking for it, that Pearly was too reckless to handle a motor." This declaration made under the circumstances proven does not bring it within the rule laid down in I. C. R. R. Co. v. Outlands' Admr., *supra,* and was not competent as substantive evidence. The admission of this declaration of the mine superintendent, after the injury was sustained as well as the other declarations alleged to have been made by him after the injury, being incompetent upon the issues in this case, were very prejudicial to the substantial rights of appellant, and must result in a reversal of the judgment.

The evidence was sufficient upon the cause of action stated in the petition and amended petition to submit the case to the jury.

The contention of appellant that the court erred in not instructing the jury peremptorily to find for it, on account of the alleged contributory negligence of appellee, is not meritorious. He was engaged in the line of his duty; he had a right to assume, without actual knowledge to the contrary, that the motorman was a competent and fit person to operate the motor; when the motorman prepared to draw the rail, the appellee took a position at a place customary and usual under such circumstances for miners engaged as he was, to take position. If the motor was carefully and properly operated, there was no danger, which could be obvious to any one. It is true, that he was an experienced man in the work of mines, but it does not appear that he had any experience with the operation of a motor, under such circumstances. He was not the superior servant of the motorman, and he had no authority to control him in the manner of handling the motor. There can be no doubt, that it is the duty of the servant to exercise that degree of care which is commensurate with the character of his occupation, and if by his negligence he comes to injury, he has no right to complain, although his master may have, also, been negligent. The act of

negligence insisted upon as having been committed by appellee, was that he attached the chain to the rail, in such a way, as to cause it to strike the cross-tie, and thus was caused to arise at the rear end and swing around and strike the appellee. The evidence fails to show without contradiction that the appellee attached the chain to the rail, and if it did show such to be the fact, without contradiction, it does not appear that the injury necessarily or probably arose from the manner in which the chain was attached to the rail. There does not seem to have been any other way to attach it, and if the motor had been carefully moved and kept under control, no injury could have arisen from it. It is insisted that appellee ought to have gone, further, away, than he did when the motor was put in operation. For the reasons above stated, this could not be attributed to him for negligence. In the selection of a safe place, the doctrine is announced in 26 Cyc., 1249, as follows:

"If a servant voluntarily and unnecessarily puts himself in a dangerous position, where there are other positions, which he may take in connection with the discharge of his duties, which are safe or reasonably so, he cannot recover damages for an injury contributed to by his negligence in doing so, but to constitute negligence there must be reason to apprehend danger; and that as between two apparently safe positions, a servant fails to choose the one which proves to be safe in fact cannot be ascribed to him as negligence."

The question as to whether or not appellee was guilty of contributory negligence should have been, as it was, submitted to the jury.

The instructions given seem to have fairly embraced the law of the case upon the evidence as heard upon the trial, and fairly presented the issues to the jury for determination, and the court did not err in refusing the instructions asked for by appellant, as the matters dealt with by them, so far as were proper to be given, were embraced in the instructions given.

For the reasons above indicated, the judgment appealed from is reversed, and this cause remanded with directions to proceed in conformity to this opinion.